Caldwell v. Smith.

CALDWELL *et al.* v. SMITH *et al.*, *Appellants.*

The finding and decree of the lower court setting aside a conveyance as being in fraud of creditors reversed because not supported by the evidence.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge,

REVERSED.

*Strong & Mosman* for appellants.

(1) The evidence shows that all the plaintiffs, ex-cept, possibly, Caldwell, were subsequent creditors. (2) Under the evidence, the court should not have ren-dered a decree in favor of the subsequent creditors. *Payne v. Stanton*, 59 Mo. 158; *Pepper v. Carter*, 11 Mo. 540; *Belford v. Crane*, 16 N. J. Eq. 265. (3) The proof failed to show that the conveyance was voluntary, and there was, also, a total failure to sustain the charge that it was not *bona fide.* There was no evidence of an intent to defraud on the part of Charles G. Smith, as charged, nor a participation in such intent by defendant. (4) The defendant had a right to make the conveyance in ques-tion to save his own credit. *Murray v. Cason*, 15 Mo. 378; *Gates v. Lebaume*, 19 Mo. 17; *Ames v. Gilmore*, 59 Mo. 537; 1 Mo. App. 371.

*Smith & Krauthoff* also for appellants.

(1) If the conveyance was not voluntary, it is good against all creditors, both existing and subsequent, un-less made for a fraudulent purpose in which the grantee joined the grantor. *Shelley v. Boothe*, 73 Mo. 75; *Ryan v. Young*, 79 Mo. 30. The decree in this case proceeds on the theory of a conveyance for a consideration. (2) And even if the deed be held to be voluntary, it was only void as to the then (June, 1873) existing creditors, Caldwell, and possibly Tyner, and could only be held void as to subsequent creditors, if shown to have been made with the actual intent to defraud them. *Hurley v. Taylor*, 78 Mo. 248; *Bayha v. Kessler*, 79 Mo. 555.

(3) Fraud must be shown, the mere assumption of it is not warranted. *Funkhouser v. Lay*, 78 Mo. 458 ; *Ames v. Gilmore*, 59 Mo. 537; *Henderson v. Henderson*, 55 Mo. 555 ; *Rumbold v. Parr*, 51 Mo. 592 ; *Durkee v. Chambers*, 57 Mo. 575.　(4) The testimony of the widow of the grantor, detailing the conversations of her deceased husband, was incompetent. R. S., sec. 4014; *Holman v. Backus*, 73 Mo. 49 ; *Buck v. Ashbrook*, 51 Mo. 540. (5) And all the evidence of the declarations of Charles G. Smith, grantor, made after the transaction and in the absence of Abram P. Smith, grantee, without any proof *aliunde* of the alleged agreement to commit a fraud, was inadmissible. *Durkee v. Chambers*, 57 Mo. 581 ; *Boyd v. Jones*, 60 Mo. 471 ; *Bank v. Russell*, 50 Mo. 534.

*Johnston & Anthony* for respondents.

(1) The court did not commit error in permitting the widow of Charles Smith to testify, she being a party in interest in the case. R. S., 1879, sec. 4010 ; *Fugate v. Pierce*, 49 Mo. 441 ; *Evers, Trustee, etc., v. Life Association*, 59 Mo. 429.　(2) Fraud must be proved, but it is not necessary that direct or positive evidence be produced. It may be inferred from the situation of the parties and the circumstances surrounding their transactions. *Hopkins v. Williams*, 58 Mo. 201 ; *King v. Moon*, 42 Mo. 551 ; Bump on Fraud. Convey. (2 Ed.) 581–2. (3) The finding of the court is supported by the evidence. (4) The finding and judgment of the court are not against the law of the case, for at the time the deed was made by Charles he was largely indebted and insolvent, and said deed was made to hinder his creditors from collection against him, and a part of the plaintiffs in this case were then creditors, if not all of them, and where subsequent creditors can show that a deed was made to defeat prior creditors, such subsequent creditors, after the deed is set aside, will be permitted to participate in the fund.

Bump on Fraud. Convey. (2 Ed.) 316–17 ; *Savage v. Murphy*, 34 N. Y. 508 ; *Kerr v. Smith*, 20 Wall. (U. S.) 36 ; *Winchester v. Charter*, 12 Allen (Mass.) 606 ; *Horn v. Volcam Water Co.*, 13 Cal. 62 ; 1 Am. Lead. Cases, side page 40 ; 1 Story Eq. Juris. (Redf. Ed.) sec. 361.

HENRY, C. J.—This suit is to set aside a conveyance of land made by Charles G. Smith to his brother, Abram P. Smith, on the fifteenth of June, 1873. The land conveyed was all the land owned by said Charles G., and lay in Andrew county, Missouri. The plaintiffs are creditors of said Charles, who died in February, 1876. The circuit court rendered a judgment setting aside the conveyance, from which defendant, Abram Smith, has appealed to this court. The plaintiff's demands allowed against the estate aggregate about $1,300, and the land in controversy, at the date of the conveyance, was worth between seven and eight thousand dollars. The debts of C. G. Smith at the time of the conveyance to his brother, excluding the debt to the latter, were inconsiderable compared with the value of the land conveyed, and the personal property owned by him. The petition charges that, at the time of the conveyance, C. G. Smith was insolvent. That the conveyance to Abram was without consideration, and made with intent to defraud the creditors of C. G. If the debt claimed by Abram be excluded from C. G.'s liabilities, the testimony shows that he was not insolvent, owing less than three thousand dollars, and owning property worth between ten thousand and eleven thousand dollars.

Upon these undisputed facts it is difficult to conceive a motive for the conveyance, inconsistent with good faith. It is not alleged that it was made to enable the grantor to defraud subsequent creditors, and the debts subsequently contracted by the grantor are not of a magnitude to warrant such an imputation. But, aside from all this, we think that the testimony establishes the *bona fides* of the transaction.

The wife and children of C. G. Smith testified to declarations made by C. G. Smith, before the deed was executed, to the effect that he intended to make the conveyance in order to get time to settle his security debts, about one thousand dollars. They do not say that C. G. Smith was not indebted to Abram in the amount named as the consideration for the deed. They did not pretend to know. They had no conversation with Abram on the subject, and their testimony, and a letter from Abram to Charles, dated May 1, 1872, in which he acknowledges the receipt of a draft for $2,210, and states that it leaves in his hands a balance of one hundred and three dollars in Charles' favor, and asks what he shall do with it, is the principal evidence relied upon to establish the allegations of the petition. The plaintiffs took and read the deposition of Abram Smith, in which, in a candid, clear and straightforward manner, he gives an account of the transactions between himself and his brother, showing the latter indebted to him for money borrowed, in the sum of about $5,600, and, as to the several items of that indebtedness, is corroborated by another brother, and by Ayres, Ribbie, Ratskin, Hatfield and Sanders, citizens of the highest respectability of Morgan county, Illinois, merchants, bankers and lawyers. Charles G. Smith lived in that county for many years, until 1865, when he immigrated to this state. He owned a small farm in Illinois, upon which there was a mortgage. He was greatly embarrassed, and the evidence tends to prove that he was in fact insolvent. His brother Abram assumed and paid a number of his debts, and loaned him $1,300 when he left for Missouri. In March, 1868, $2,700, and these amounts, added to the debts of his brother, which he had assumed and paid, aggregate $5,600. He explains in his testimony, the letter written to Charles, in which he acknowledged a balance of one hundred and three dollars due to Charles, as follows: That in the fall of 1871 he loaned Charles two thousand dollars, and, in

May, 1872, received the draft for $2,210, which was one hundred and three dollars more than enough to pay the debt and asks what he should do with it, and was told to pay a physician's bill, twenty-five or thirty dollars, which he did, and remitted the balance to Charles. Mr. Ayres, a member of the banking firm of M. P. Ayres & Co., doing business at Jacksonville, Illinois, testified that their books showed numerous checks drawn by Abram in favor of C. G. Smith, from 1865 to 1868, and among them a check for two thousand dollars October 1, 1866.

It will be observed that Charles had a large family, thirteen or fourteen children, and was in an embarrassed condition, including in his indebtedness what he owed the defendant. Abram had been assisting him, advancing him money for the purchase of cattle, and dividing the profits with him, and it is by no means strange that, instead of crediting that small balance upon his large claims against his brother, he remitted it to him. He felt that what Charles owed him was safe, for he testifies that he did not know the extent of his indebtedness to others, and, if he had, it was not of an amount to make him uneasy. In 1873, at the instance of Charles, he took the land in payment of his debt. No witness contradicts Abram Smith as to any fact testified to by him, while, as to nearly every fact stated by him, he is corroborated by other disinterested witnesses. There is no evidence of any fraudulent intent on the part of Charles, except his declarations to his wife and children, and the most charitable view of their testimony is to admit that C. G. Smith made the statement testified to by them; but the record discloses a motive for his concealment from them of the amount of his indebtedness to Abram. One of the sons testifies that in a conversation between his parents, his mother was fretting, and his father told her that "by being saving it would not be long before she could get it back again"

No doubt his purpose was to conceal from his wife the extent of his indebtedness, and thus relieve her of the anxiety on the subject, which made her uneasy and fretful; but the evidence does not leave room for doubt that Charles owed Abram $5,600 for borrowed money, with interest on $2,900 from 1865, and on $2.700 from March, 1868. Mr. Sanders, an old and intimate friend of C. G. Smith, testified that he saw C. G. Smith at Savannah, a few days before the deed was made, and Smith told him he was going to Illinois to secure Abram for the money he owed him. Said Abe had helped him when he needed it, and he thought he ought to secure him while he could. Saw him again after he returned from Illinois, and Charles said that on a settlement with Abe they found he owed Abe as much as the land was worth, and he had deeded the farm to pay it. The preponderance of the evidence on every issue made by the pleading is against the plaintiffs, and the judgment is reversed and the cause dismissed. All concur.