HARRIETT COOPER v. A. G. NEWELL et al.; GEORGE W. PLUMER, Appellant.

**Division One, December 31, 1914.**

1. **CONVEYANCES: Voluntary Deed: Subsequent Deed of Trust by Grantor.** Where the owner of land executed and recorded a voluntary deed, and the grantee therein knew nothing about the deed until the grantor more than four years afterward executed a deed of trust on the same land in her favor, when she indorsed for his use the note secured thereby, and thereafter she conveyed the land at the grantor's direction and in consideration of money paid solely to him, the beneficial interest as between the parties remained in the grantor, and the trust deed was a charge upon his equity.

2. ————: **Deed of Trust: Assignment of Debt.** The assignment of a note secured by a deed of trust carries with it the deed of trust.

3. ————: ————: **Purchaser With Notice.** Where a purchaser of land knew that a grantor in a voluntary deed and in a subsequent deed of trust to secure a note was attempting to sell the land as his own, and the arrangement for the payment of the price was upon the basis of his ownership, and the purchaser's agent had actual knowledge of the trust deed, the purchaser was chargeable with notice of the deed of trust and he took his title subject thereto.

4. ————: ————: **Release by Other than Holder of Note.** A marginal release of a deed of trust by one who had previously assigned the note secured thereby, affords no protection to a purchaser of the legal title with notice.

5. ———: ———: ———: Affidavit that Notes are Lost. An amendment to the statutes on releases providing that satisfaction of a mortgage or deed of trust without production of the notes secured shall not be permitted until the *cestui que trust* and the maker of the notes, or their legal representatives, have made affidavits that the notes have been paid and delivered to the maker and cannot be produced because lost or destroyed, does not authorize any one to enter satisfaction who was not previously authorized to do so, but simply attempts to guard against a false release by the *cestui que trust* named in the mortgage by requiring of him and the maker affidavits which, if falsely made, subject the affiants to the pains and penalties of perjury.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

AFFIRMED.

*H. L. Shannon* for appellant.

(1)   Newell conveyed his half interest to his mother, A. G. Newell. It is claimed by respondent that there was no consideration for this deed, and that the effect of the conveyance was to vest the legal title to the half interest in the land in A. G. Newell, as trustee, for J. P. Newell. A voluntary conveyance is subject to such a construction against an existing creditor, but not as against a subsequent creditor. Krueger v. Vorhauer, 164 Mo. 156; Caldwell v. Smith, 88 Mo. 44; Scudder v. Morris, 107 Mo. App. 634. (2) Respondent introduced no evidence that there was no consideration paid by A. G. Newell to J. P. Newell for the undivided half interest in the land in controversy except that Mrs. Newell had no recollection of the transaction. They were partners in the loan, insurance, and real estate business, and J. P. Newell had the exclusive management of the same. Mrs. Newell acquiesced in whatever was proposed and done by her son. She received a monthly allowance out of the business, not in full satisfaction of her interest in the

business, but on account. Whether the value of this land was charged to Mrs. Newell on the partnership account, we do not know, but the burden was on respondent to prove that there was no consideration for the conveyance, for the law presumes a consideration. 13 Cyc., 735. (3) When J. P. Newell executed the trust deed conveying the land in controversy to J. V. Koontz, as trustee to secure the $1000 note payable to Anna G. Newell, he had no interest in the land, and said trust deed created no lien on the land. To hold that it did would contravene the doctrine of merger. 16 Cyc. 665. (4) While Anna G. Newell would be estopped as against the respondent, Harriett Cooper, from asserting that the trust deed was not a lien on the land in controversy by the fact that she endorsed and delivered the note in controversy to the respondent, this doctrine is not available to respondent because it is not pleaded. Golden v. Tyer, 180 Mo. 196; Loving Co. v. Cattle Co., 176 Mo. 330; Casler v. Gray, 159 Mo. 588; Sanders v. Chartrand, 158 Mo. 352; Cockrill v. Hutchinson, 135 Mo. 67. (5) Mrs. Cooper purchased the note and deed of trust in controversy with notice of the fact that J. P. Newell had parted with his interest in the land covered by the deed of trust, the deed from him to his mother having been recorded. Sec. 2810, R. S. 1909. (6) Plumer's equities are at least equal to those of Mrs. Cooper, and being the holder of the legal title, he is entitled to protection. 23 Am. & Eng. Ency. Law (2 Ed.), p. 487. (7) Where it is sought to defeat a clear legal title of record by one having a mere equitable title, on the ground that the equities of the latter were known to the former at the time of acquiring the legal estate, the allegation of notice must be established by clear and satisfactory proof, so as to affect the conscience of the purchaser, and to fix upon him the imputation of *mala fides*. 39 Cyc. 1785; Hendricks v. Callaway, 211 Mo. 536. If instead of making the note secured by the trust deed in contro-

versy to A. G. Newell, J. P. Newell had made it to the respondent, Mrs. Cooper, and her action to foreclose had been against A. G. Newell, the facts of this case would not warrant a recovery. How, then, can a recovery be sustained against George W. Plumer, the appellant? Youngblood v. Vastine, 46 Mo. 239.

*McReynolds & Halliburton* for respondent.

(1) The record showing that the conveyance from J. P. Newell to Anna G. Newell was made and filed for record, without any consideration for. same and without knowledge or consent, there was no delivery of said conveyance and the title did not pass but remained in J. P. Newell. Cravens v. Rossiter, 116 Mo. 338; Powell v. Banks, 146 Mo. 620; Seibel v. Higham, 216 Mo. 121; Chambers v. Chambers, 227 Mo. 262; Terry v. Glover, 235 Mo. 544. (2) While the record title to the land was in Anna G. Newell, the legal title was in J. P. Newell. See authorities under point I and testimony of A. G. Newell. (3) There was no place to plead estoppel against Anna G. Newell in this case, as she was not making any claim whatever, but stood admitting the allegations of plaintiff's petitions. If there is any place - for any one to plead estoppel in this case it is for appellant Plumer. (4) A. G. Newell by her individual testimony shows that she paid no consideration for the conveyance from J. P. Newell. (5) At the time Plumer bought this land from J. P. Newell he was furnished with an abstract of title, showing the deed of trust under which Harriett Cooper claimed, which was of itself sufficient to constitute notice, and he was not a purchaser in good faith without notice of the claim of respondent against this land, and he took the title (if any) subject to her adverse claim. In equity one who takes with notice of an adverse claim takes subject thereto, and to constitute

such notice anything tending to put a prudent man on the alert is sufficient. Richmond v. Ashcraft, 137 Mo. App. 199; Lee v. Bowman, 55 Mo. 400; Marlow v. Leiter, 87 Mo. App. 584; Smith v. Mount, 149 Mo. App. 674; Rhodes v. Outcalt, 48 Mo. 367; Meier v. Blume, 80 Mo. 183; Roan v. Winn, 93 Mo. 503; Drey v. Doyle, 99 Mo. 467; Barrett v. Davis, 104 Mo. 561; Hill v. Tissier, 15 Mo. App. 306. (6) The question of actual notice to Plumer is one for the trier of the fact. Masterson v. Railroad, 5 Mo. App. 64; Hill v. Tissier, 15 Mo. App. 307; Muldrow v. Robinson, 58 Mo. 331. Judge Blair having tried the fact and found that Plumer had notice of Mrs. Cooper's claim and there being substantial evidence to support the finding, this court will sustain the finding of the trial court. (7) The burden is not on plaintiff to show that Anna G. Newell paid no consideration for the deed from J. P. Newell but is upon respondent Plumer. Kier v. Birnie, 25 Ark. 225; Loyds v. Lynch, 25 Pa. St. 419, 70 Am. Dec. 137; Blaesi v. Blaesi, 14 N. Y. Civ. Proc. 216. (8) There is no ground for the doctrine of merger in this case. (9) The appellant assumes that inquiry by Plumer or his agent would have been futile. If he had inquired only of the Newells it might have been, but J. V. Koontz was in the city of Carthage and could easily have been found and interviewed. Inquiry by Plumer of the Newells would not have been sufficient to protect him as an innocent purchaser. Dudley v. Witter, 46 Ala. 694; Skeel v. Sprakes, 8 Paige (N. Y.) 196; Little v. Giddings, 47 Tex. 109. (10) The First National Bank of Carthage and J. D. Perkins were the agents of Plumer in closing the trade with Newell and notice to them or either of them was notice to Plumer. Meier v. Blume, 80 Mo. 183.

BLAIR, C.—From a decree of the circuit court of Jasper county establishing the lien of a deed of trust and foreclosing the same, defendant Plumer appeals.

The facts are that in 1899 Plumer and J. P. Newell, of the firm of A. G. Newell & Son, became the owners, as tenants in common, of the north half of the southeast quarter of section 7, township 29, range 31, Jasper county, Missouri. In February, 1901, J. P. Newell and wife executed and recorded a deed to A. G. Newell for a one-half interest in this land. A. G. (Anna G.) Newell was the mother and partner of J. P. Newell but had retired in 1898 from active participation in the transaction of the partnership business, being paid monthly an agreed sum by her son. She knew nothing of the execution or recording of the deed to her until called upon to transfer the title to appellant in 1907, and had paid no consideration for the deed. In December, 1905, J. P. Newell and wife executed the trust deed in question, conveying the land above described to J. V. Koontz, as trustee for A. G. Newell, to secure a note for $1000, due December 22, 1910. Soon thereafter A. G. Newell indorsed the note to J. V. Koontz, trustee in the deed of trust, and indorsed the coupons in blank; and in a short time, and prior to June 22, 1906, Koontz indorsed the note to the plaintiff, Mrs. Harriett Cooper, Newell having sold it to her for face value. The interest was paid regularly to plaintiff by A. G. Newell & Son. The firm, J. P. Newell being the active member, was and for some time had been loaning money for both plaintiff and appellant Plumer. Mrs. A. G. Newell, Plumer and plaintiff had been reared together in Franklin, Pa., and plaintiff and Plumer were also personally acquainted with J. P. Newell and with each other. In 1907, J. P. Newell wrote Plumer, who then lived in Ohio, that he desired to sell him the half interest in the land; Newell wrote that he wanted to sell as he needed the money. Plumer then had no actual knowledge of the existence of the deed from J. P. Newell to A. G. Newell. He testified he authorized the First National Bank of Carthage to represent him ''in this deal with Newell, and also au-

thorized them to pay Newell $2000 for this land when he delivered the deed—when he made a good deed," and directed them to have their attorney examine the title and to accept the deed if everything was all right. Plumer wrote the bank he had bought the land from Newell and instructed them to pay Newell out of a fund of $3700 Newell had collected for him. The bank had its attorneys examine the abstract of title. The abstract they examined showed the deed of trust J. P. Newell and wife had executed to A. G. Newell, but showed no release thereof, and, as a matter of fact, it had not been released. The attorneys certified that the abstract showed Anna G. Newell owned a one-half interest and G. W. Plumer (appellant) owned the other half and that they had good title thereto in fee simple, subject only to State and county taxes for 1907. Thereupon the bank accepted and recorded a deed from Anna G. Newell to Geo. W. Plumer and paid J. P. Newell the purchase price, $2000. The deed and abstract and opinion of the attorneys as to the title were, in a few days, sent to appellant, who then wrote to Newell concerning the trust deed shown in the abstract but received no reply. Soon thereafter he was called to Missouri by other things and then visited Carthage and took up with J. P. Newell the matter of the deed of trust in question. The upshot of this was that, on December 23, 1907, J. P. Newell and A. G. Newell each made affidavit (in statutory form) that the note had been paid and destroyed and for that reason could not be produced for cancellation. A. G. Newell then signed a marginal release in usual form. J. P. Newell continued to pay interest to plaintiff on her note until June, 1910, when he defaulted therein and plaintiff sent the note and deed of trust to Carthage for the purpose of enforcing her lien. Investigation disclosed the sale to appellant and the attempted release of the deed of trust, and this suit followed.

I. The deed executed in 1901 by J. P. Newell and wife to A. G. Newell was without consideration and not intended by the parties to convey the beneficial title to A. G. Newell. The clearest proof of this lies in A. G. Newell's conveyance of the same land to appellant at J. P. Newell's direction and in consideration of money paid solely to J. P. Newell. Added to this is the fact that A. G. Newell knew nothing of the deed to her at least until J. P. Newell executed the deed of trust and that then she indorsed for his use the note that deed secured. The cases cited by appellant (Krueger v. Vorhauer, 164 Mo. 156; Caldwell v. Smith, 88 Mo. 44; Scudder v. Morris, 107 Mo. App. 634) merely go to the point that without proof of fraud a voluntary conveyance cannot be set aside at the suit of a subsequent creditor. The question in this case is as to the actual ownership of the land as between A. G. Newell and J. P. Newell. As stated, the evidence clearly shows, as the trial court found, that, as between the parties, the beneficial title remained in J. P. Newell despite his deed to A. G. Newell.

*Voluntary Conveyance: Subsequent Deed of Trust by Grantor.*

II. The legal title being in A. G. Newell but the full equitable title being in J. P. Newell, the trust deed executed by the latter charged his equity with the payment of the note in question, and the assignment of the note carried with it, as incident to it, the trust deed securing it. As between these parties (respondent, A. G. Newell and J. P. Newell) this was the situation when appellant bought the land in December, 1907.

*Assignment of Debt.*

III. Appellant claims to be an innocent purchaser, for a valuable consideration and without notice. "Whether one actually knows a given fact is often a secret to which he alone has the key; but justice is not so indulgent as to encourage his throwing the key away. Applying to

*Purchaser with Notice.*

him the principle of common experience, it is held quite generally, even in actions at law (Van Raalte v. Harrington, 101 Mo. 602) and, for stronger reason, in equity, that from facts and circumstances which would naturally put a person of ordinary caution, in the same situation, on an inquiry reasonably leading to a knowledge of the truth, a court may justly infer and find such knowledge.'' [Barrett v. Davis, 104 Mo. 1. c. 561, 562.] Applying this rule it is not possible to avoid attributing to appellant knowledge of J. P. Newell's continuing ownership, in equity at least, of the land in question. The two had been tenants in common of the land; appellant's testimony shows clearly that Newell was trying to sell the land as his own, that he was claiming to be acting for himself in selling it and that the arrangement as to the payment of the purchase price was upon the basis of his ownership. Appellant advised his agent at Carthage, in effect, of this fact, and that agent had actual knowledge of the trust deed securing respondent's note, and such knowledge ''countervails the effect of registry and dispenses with it'' (Gross v. Watts, 206 Mo. .1. c. 395), and notice to appellant's agent was notice to appellant. [Meier v. Blume, 80 Mo. 1. c. 183, 184.]

The situation when appellant bought was therefore this: He had notice that J. P. Newell owned the land in equity and that A. G. Newell held title for him and knew that J. P. Newell had incumbered his interest for $1000, the note now owned by respondent.

IV. With knowledge of Newell's interest and the unreleased encumbrance upon it, appellant bought the property, and, having bought with knowledge, must be held to have bought subject to that trust deed.

**Release by Other than Holder of Note.**

Respondent bought the note before maturity and for value and before the entry of satisfaction. The

assignment of the note to her carried the trust deed as an incident.

An entry of satisfaction by A. G. Newell after she assigned the note, even had such entry been made before plaintiff's purchase, would not have protected appellant, for after assigning the note she was no longer the party entitled to execute a release. [Lee v. Clark, 89 Mo. l. c. 558, 559; Hagerman v. Sutton, 91 Mo. l. c. 533; Borgess Inv. Co. v. Vette, 142 Mo. l. c. 574; Bank v. Ins. Co., 145 Mo. l. c. 160.]

Since these cases were decided the statute concerning releases has been in some respects amended but such amendments do not affect the question in hand. One amendment provides that, in case satisfaction is sought to be entered without the production of the notes secured, it shall not be permitted until "the *cestui que trust* named in the mortgage or deed of trust desired to be released" and "the maker of such note or notes" or their respective legal representatives shall, respectively, make an affidavit that the note or notes have been paid and delivered to the maker and an affidavit that the note or notes have been paid and cannot be produced because lost or destroyed. This amendment does not authorize any one to enter satisfaction who was not previously authorized to do so. It simply attempts to guard against a false release by the *cestui que trust* named in the mortgage by requiring of him and the maker affidavits which, if falsely made, subject affiants to the pains and penalties of perjury. Had the Legislature intended by this provision to authorize any one other than the lawful holder of a note to release a deed of trust or mortgage securing it, it could easily have said so. Until it does plainly say so this court ought not by strained construction torture a meaning from the statute which its language does not justify and which would practically put an end to the negotiation of notes secured by mortgages and deeds

*Affidavit of Loss of Notes.*

Bank v. Clifton.

of trust except in cases in which buyers of such notes were willing to take them at the risk of losing their security in case the *cestui que trust* and maker of the note ignorantly or fraudulently made the statutory affidavits and entered satisfaction.

In this case it seems clear A. G. Newell had no fraudulent intent in making the affidavit she did make, being deceived as to the facts. Further, fairness requires the statement that the examiners of the abstract are not chargeable with negligence. As the case appeared from the abstract submitted to them it fell within the rule announced in Barrett v. Baker, 136 Mo. 512. The fact distinguishing that case from this is that in this case J..P. Newell had a real and mortgageable interest, of which appellant had notice, and in the case cited Roy had none. The fact of Newell's interest was known to appellant but not to the attorneys who examined the abstract.

The doctrine of merger is patently inapplicable to the facts.

The judgment is affirmed. *Brown, C.,* concurs in the result.

PER CURIAM.—The foregoing opinion of Blair, C., is adopted as the opinion of the court. All the judges concur; *Bond, J.,* in result.