ST. LOUIS MUTUAL LIFE INSURANCE COMPANY, Appellant, v. ANNA
K. WALTER, C. A. KIESLER, Trustee for J. H. KIESLER, J. H.
KIESLER, JOHN E. WALTER, GILBERT J. WALTER, FRANK O. WAL-
TER, JULIA WALTER, His Wife, LUCIUS P. WALTER, FRANCES
WALTER, His Wife, RUSSELL C. WALTER, ELMER G. WALTER,
NORA L. HUBER, GILBERT N. HUBER, Her Husband, DENZEL
WALTER, a Minor, WILBURN W. WALTER, a Minor, MERIDITH
WALTER, a Minor, BEULAH WALTER, a Minor, GEORGE J. MECKER,
Trustee for MARTIN THIERET, MARTIN THIERET, JOSEPH F. FEN-
WICK, Trustee for JOHN A. UNTERREINER, JOHN A. UNTER-
REINER, A. R. LUKEFAHR, HARRY W. LUKEFAHR, EDNA H. LUKE-
FAHR, His Wife, ANNA M. LUKEFAHR, JOHN DEPAUW, R. CLYDE
FENWICK, C. A. KIESLER, Trustee for ANNA K. WALTER, and
WILLIAM SCHAUPERT.—46 S. W. (2d) 166.

Division One, February 11, 1932.

716

*Leahy, Saunders & Walther* for appellant.

*Samuel Bond, Davis & Damron, P. B. Hood* and *Jas. T. Green-well* for respondents.

FERGUSON, C.—This is a suit in equity to cancel and set aside a trustee's deed executed by the trustee named in a deed of trust given to secure the payment of an indebtedness therein described. The second amended petition or bill upon which the case was tried, states that though plaintiff was the assignee for value, before maturity, of the notes secured by the deed of trust and the legal owner and holder of said notes and deed of trust, the trustee designated in said deed of trust without plaintiff's "knowledge, authority or consent" undertook in his capacity as such trustee to sell and convey the land described in said deed of trust to certain of the defendants; that by the terms of said deed of trust a valid exercise of the power of sale therein conferred upon the trustee is conditioned upon a request to such trustee by the legal owner and holder of the notes therein secured that such sale be made but that the trustee made a pretended sale and executed the pretended trustee's deed, cancellation of which is sought, without any request therefor by plaintiff and without plaintiff's "knowledge, authority or consent." The bill prays "that the pretended trustee's deed be cancelled, set aside and held for naught;" that plaintiff have judgment against

one of the defendants, as a maker of the notes secured by the deed of trust, for the balance alleged to be due and unpaid on the notes; that the lien of said deed of trust be declared, the equity of redemption foreclosed, the land sold and the proceeds thereof applied to the payment of said indebtedness.

The answer denies "that, under the terms of said deed of trust, the power of said trustee to foreclose said deed of trust and to sell said property was conditioned upon request for such sale being made by the assigns of the party of the third part;" and pleads that both the beneficiary in the deed of trust (plaintiff's assignor) and the trustee in the deed of trust had been constituted by plaintiff as its agents and acted as plaintiff's agents in making such foreclosure sale and that by receiving, using and retaining part of the proceeds of such foreclosure sale plaintiffs have ratified and approved such sale.

There is very little controversy about the facts. J. H. Kiesler and C. A. Kiesler, brothers, were engaged in the business of loaning money secured by deeds of trust on real estate, at Perryville, Missouri, under the style of Kiesler Brothers. They were also officers of the Perry County Bank, J. H. Kiesler being the cashier and active executive officer of the bank. The business conducted by Kiesler Brothers was carried on at and through the bank. On October 30, 1918, J. H. Kiesler completed negotiations with Phillip Walter, a farmer residing in Perry County, Missouri, for a loan in the amount of $10,000 secured by a deed of trust on 191.93 acres of farm lands in that county. Phillip Walter and his wife Anna K. Walter executed and delivered two negotiable, promissory notes, each in the amount of $5,000, bearing date of October 30, 1918, payable to the order of J. H. Kiesler five years after date at the Perry County Bank, with interest at the rate of six per cent per annum from date payable annually on the first day of November of each year, as evidenced by coupon notes, also payable to the order of J. H. Kiesler at the Perry County Bank. The deed of trust was executed by Walter and wife to C. A. Kiesler as party of the second part and trustee, and J. H. Kiesler as party of the third part and beneficiary. From time to time loans made by the Kiesler Brothers with real estate as security were purchased by plaintiff. An abstract of such loans covering a period from 1909 to 1922 was introduced in evidence. Some of these loans are shown to have been purchased from J. H. Kiesler, others from Kiesler Brothers and the Perry County Bank. Notations on plaintiff's loan register directed that collections on such loans were to be made through J. H. Kiesler or Perry County Bank. Of date of April 13, 1921, J. H. Kiesler sold and endorsed the two Walter notes to plaintiff, in payment for which plaintiff issued its check in the face amount thereof payable to J.

H. Kiesler, who delivered said notes and the deed of trust to plaintiff. Plaintiff's loan record bears a notation directing that collections on this loan be made "through J. H. Kiesler." Walter and wife were never advised that their notes had been assigned and transferred to plaintiff and had no knowledge thereof. Walter died, intestate, August 16, 1923. He had paid the annual interest of $600 each year to J. H. Kiesler at the bank. He paid the interest for each of the two years, 1921 and 1922, next preceding his death, by making notes for the amount thereof payable to the Perry County Bank, so that when he died the bank held his notes for $1200 covering the interest for these two years. The Kieslers regularly remitted the interest payments to plaintiff. The principal notes matured on October 30, 1923, and under date of November 1, 1923, the plaintiff company wrote to J. H. Kiesler inquiring whether the loan was to be renewed. On November 27, 1923, plaintiff again wrote to J. H. Kiesler as follows: "We have not as yet been advised by you in reference to farm loan of Phillip Walter which matured on October 30th last. If it is to be renewed it should be taken care of at once." A letter dated December 17, 1923, states: "We have not been advised by you in reference to the farm loan of Phillip Walter which matured on October 30th last, and it must be taken care of at once if same is to be renewed." Under date of December 20, 1923, plaintiff wrote: "You have not advised us in reference to the farm loan of Phillip Walter, which we would be pleased to have taken care of at once." Plaintiff wrote J. H. Kiesler to the same effect on January 18, 1924, and again by letter under date of February 4, 1924. On March 1, 1924, plaintiff wrote: "We have not as yet received any definite advice from you in reference to the Phillip Walter farm loan . . . and which we would prefer to have taken up." Apparently J. H. Kiesler made no reply to any of these inquiries, and on April 25, 1924, plaintiff again wrote him stating that on April 30th interest on the Walter loan would amount to $300, making a total due on the loan as of that date of $10,300, and "we very much desire to have this loan with interest paid off in full on the above mentioned date, namely, April 30, 1924." In a letter dated April 28, 1924, J. H. Kiesler for the first time heeds plaintiff's repeated inquiries concerning the Walter loan. With assurance of his personal and business friendliness for plaintiff company, he states in reference to the Walter loan: "Walter died about the middle of last August, and under the law land cannot be sold for at least nine months after the death of the maker of a deed of trust. The heirs can sell sixty-eight acres of it for $9,500 and want to do this as soon as they legally can do so." In the meantime J. H. Kiesler had been making demands upon the administrator of the Phillip Walter estate for the payment of the loan. G. B. Huber, a

son-in-law of the deceased Walter, was administrator of the estate. Kiesler carried on all his negotiations in reference to the loan with Huber who acted at all times upon the assumption that J. H. Kiesler, the payee in the notes and beneficiary in the deed of trust, was the owner and holder of said notes and deeds of trust. Huber endeavored to arrange with Kiesler for a renewal of the loan, but as some of the Walter heirs were minors Keisler advised him that such renewal could not be made. Kiesler threatened foreclosure, whereupon Huber offered to personally pay between three thousand and four thousand dollars in cash on the indebtedness and asked Kiesler's assistance in obtaining the money necessary to pay the balance of the loan. Kiesler then proposed that if the $1200 Walter note held by his bank be also charged against the land and included as a part of the settlement he would have the land sold under the deed of trust and in the event the land sold at the foreclosure sale for a price sufficient to pay the entire indebtedness including the $1200 note he would accept a cash payment in the amount offered by Huber and make a new loan, secured by a deed of trust on the land, in an amount sufficient to cover the balance. Pursuant to this arrangement J. H. Kiesler and his brother C. A. Kiesler, the trustee in the deed of trust, who was apparently familiar with the whole matter, caused notice of trustee's sale to be published in conformity with the terms of the deed of trust. The notices recited that default had been made in payment of the notes and that "at the request of the legal holder of said notes" the trustee, C. A. Kiesler, would sell the land described at the time, place and in the manner therein set out. On the day appointed for the sale, August 2, 1924, C. A. Kiesler, acting in the capacity of trustee, conducted the sale. Bids were made by others than adult Walter heirs, but no other bids were for an amount sufficient to discharge the entire amount of the debt including all interest and the note for $1200 held by the bank. A bid in that amount was made by Huber representing certain of the adult heirs and being the highest bid received the land was declared sold. The trustee, C. A. Kiesler, told Huber to make settlement with J. H. Kiesler as he was leaving immediately, and that he would give him (Huber) receipts upon his return about a week later. J. H. Kiesler computed the amount of the principal note and interest coupon to be $10,316.81, interest which had accrued above the coupon interest notes as $465, the bank note with interest thereon at $1278.94, and expenses of sale at $156.15, making an aggregate of $12,216.90. On this amount Huber paid to J. H. Kiesler $3500 in cash. C. A. Kiesler as trustee executed a written receipt to Huber under date of August 9, 1924, for that amount. The trustee's deed was executed by C. A. Kiesler, as trustee, to Frank O. Walter, Lucius P. Walter, John E. Walter, Gilbert J.

Walter, Russell Walter, Elmer Walter and Nora L. Huber (all de-
fendants herein) as grantees. These grantees by warranty deed
dated August 8, 1924, conveyed 39.90 acres of the land to Huber
and his wife for a consideration stated therein as $3500. Nora Huber
and her husband and the other grantees in the trust deed and their
wives joined in the execution and delivery of two negotiable prom-
issory notes, each bearing date of August 8, 1924, payable to J. H.
Kiesler or order, on demand, with interest, one note being in the
amount of $7300 and the other in the amount of $1600. The makers
of the notes then joined in a deed of trust of the same date on
124.25 acres of the land to secure the payment of the note for
$7300, and a deed of trust on 25.75 acres of said land to secure the
payment of the note for $1600. J. H. Kiesler as payee in the notes
was made beneficiary and C. A. Kiesler trustee in each of these
deeds of trust. The Kieslers received and accepted these notes as
cash, making the total amount thus received by them $12,400. This
made a surplus of $183.10, which, pursuant to an arrangement
among the parties paying the money, was paid out as follows:
$169.05 to Gilbert B. Huber, administrator, and $14.05 to the widow,
Anna K. Walter.

So far as the record shows the plaintiff had not since J. H. Kies-
ler's letter of April 28, 1924, made further inquiry about the Walter
loan. The plaintiff company held the Walter notes and deed of
trust at its offices in the city of St. Louis and since the purchase
and receipt of the notes and deed of trust from J. H. Kiesler they
had been continuously in plaintiff's possession and were not at any
time endorsed or intrusted to the Kieslers or either of them. Plain-
tiff company had no knowledge or information of the pretended
foreclosure sale, and on the other hand neither Huber who carried
on the negotiations in behalf of the purchasers at the trustee's sale,
nor any of the grantees in the trustee's deed knew that J. H. Kiesler
was not the legal owner and holder of the Walter notes and deeds
of trust, or that he had sold and assigned same, but assumed and
believed he was the owner thereof.

On August 22, 1925, $700 was paid and credited on the $7300 note
held by the Kieslers, together with the interest which had accrued
thereon, reducing the principal thereof to $6600, and for full value
paid and received, that is $6600, the Kieslers then sold and assigned
said note (without recourse) and the deed of trust securing same to
defendant Schaupert.

On August 30, 1924, J. H. Kiesler wrote plaintiff company in
reference to the Walter loan: "It will take a little time to clean
this up and we are willing to do with this loan as we did with some
others before, issue our certificate of deposit due in six months at
six per cent, with the privilege of paying off sooner if cleaned up

before that time. The heirs can raise $1,000 cash and the interest to date and we will take the note off your hands sending you in place such certificate less the amount of cash $1,000 and interest." Plaintiff replied by letter of September 2, 1924: "Our president suggests that we carry this loan until the administration of this estate is completed. We also suggest that you remit the $1,000 cash together with interest to date and we will endorse proper credit on the Walter note." On October 1, 1924, J. H. Kiesler sent plaintiff a draft for $1653.33 with a letter stating: "I enclose draft for $1653.33 being payment of $1100 on principal note of Phillip Walter and interest, $533.33, to October 1, 1924. We expect to get the Walter loan rearranged and take up the rest within a short time." Plaintiff credited this payment on the Walter notes. On May 13, 1925, July 24, 1925, and October 3, 1925, plaintiff wrote J. H. Kiesler relative to the unpaid balance on the Walter loan, but he does not seem to have made any reply to these inquiries. Some time in the early part of October, 1925, the Kiesler bank was closed and thereupon the president of the plaintiff company went to Perryville for the purpose of personally investigating the status of loans held by the company which had been purchased from the Kiesler Brothers and the bank. In the course of this investigation plaintiff for the first time learned of the pretended foreclosure sale, under the Walter deed of trust, and it was then that Huber and the grantees in the trust deed learned for the first time that plaintiff company owned the notes and deed of trust. Plaintiff was fully advised and informed of all the facts of the transaction, and on the 29th day of November, 1926, filed its original bill herein. The two Kieslers were made parties defendants, but both made default, nor did either of them testify at the trial. With the exception of the remittance for $1653.33 made to plaintiff company, the money paid to them by the purchasers and grantees in the trustee's deed was retained by the Kieslers and appropriated to their own use. The trial court found for defendants, entered judgment dismissing plaintiff's bill and plaintiff appealed.

One contention made by defendants in the trial court and reiterated here is that the clause in the deed of trust directly relating to the exercise of the power of sale provides that sale may be made by the trustee "at the request of the third party;" that the right to order such sale did not pass to the assignee; that a valid sale could be made only upon the request of the "third party" in the deed of trust, and that the sale made by C. A. Kiesler, as trustee, was upon the order and at the direction of J. H. Kiesler, the third party or beneficiary named in the deed of trust, and was therefore a valid exercise of the power of sale and passed title to the grantees in the trustee's deed who relied upon the record and, being without any actual knowledge of the assignment of the notes, were innocent purchasers. The deed of trust states that the land is conveyed "in trust to

secure the payment of a debt evidenced by certain promissory notes executed concurrently with this deed of trust by Phillip Walter and Anna K. Walter, parties of the first part, and payable to the party of the third part, or order, and bearing the same date as this deed of trust and described further as follows.'' The notes are then set out and described, after which appears this provision: ''The parties of the first part hereby covenant and agree with the parties of the second and third part, their heirs, successors *and assigns* as follows.'' (Italics ours.) Nine specific covenants follow. The sixth covenant that, ''in case of sale as herein provided same may be made at the request of the third party,'' is the basis of this contention made by defendants. Reading and construing the instrument as a whole we think it clearly, and in plain and ordinary language, provides that the covenants running to the party of the third part shall run and enure to the benefit of the heirs and assigns of such party of the third part. The execution and delivery of the notes and the deed of trust securing the payment of same was one and the same transaction. The notes and the deed of trust were inseparable. The assignment of the notes carried with it, as incident thereto, the deed of trust securing same so that the assignment and transfer of the notes passed to and vested in plaintiff all the interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes. [Baade v. Cramer, 278 Mo. 516, 213 S. W. 121; Cooper v. Newell, 263 Mo. 190, 172 S. W. 326; Lipscomb v. Talbott, 243 Mo. 1, 147 S. W. 798; First National Bank v. Rohrer, 138 Mo. 369, 39 S. W. 1047; American Bank v. Bray (Mo. Sup.), 11 S. W. (2d) 1016; 41 C. J. 885, sec. 1098.]

The trustee's deed recited that the sale was made ''at the request of the legal holder of said promissory notes.'' While the recitals in a trustee's deed are prima-facie evidence of the truth thereof (Sec. 3094, R. S. 1929) they are not conclusive and in this instance are rebutted and overcome by evidence which clearly shows that the pretended trustee's sale was not made at the request of plaintiff company, the legal owner and holder of the notes or with its knowledge, authority, acquiescence or consent. The deed of trust was placed of record at the time it was executed and delivered. Huber, the representative of the purchasers at the trustee's sale and in all the negotiations with the Kieslers, had notice both actual and constructive of the terms and provisions of the deed of trust. He testified that during these negotiations he had on several occasions examined and consulted the record thereof. The deed of trust provides that the trustee shall have power to sell only upon or at the request of the beneficiary, thereby making a request by the beneficiary or, as we construe the legal effect of this provision, his assignee, the legal owner and holder of the notes secured, a condition precedent to a valid exercise by the trustee of the power to sell and the sale made

by C. A. Kiesler, as trustee, having been made without such request was not effectual to vest title in the grantees in the trustee's deed (Magee v. Burch, 108 Mo. 336, 18 S. W. 1078; Plummer v. Knight, 156 Mo. App. 321, 137 S. W. 1019; 41 C. J. 945, sec. 1380; Jones on Mortgages (8 Ed.) sec. 2318) unless, as defendants assert, plaintiff subsequently, with full knowledge of the transaction, ratified the acts of the Kieslers in making the sale and receiving the money paid to them by Huber and the grantees in the deed for the purpose of discharging the indebtedness.

From and after the date of the assignment thereof the notes and deed of trust were in plaintiff's exclusive possession in their office in the city of St. Louis. Neither of the Kieslers thereafter had the notes or deed of trust in possession for collection or any other purpose, except interest coupons which, being payable at the Perry County Bank, were sent annually to J. H. Kiesler for collection. These coupons were collected by him and remittance in payment thereof made to plaintiff. From the correspondence between plaintiff company and J. H. Kiesler it is apparent that the Kieslers were agents of plaintiff for certain purposes in connection with loans which plaintiff company purchased from them, such as the collection of interest, the preparation and submission to plaintiff for its approval of renewal notes and deeds of trust and abstracts of title when renewals were to be made and it might be inferred that they were authorized to receive payments of principal upon maturity of the notes. Defendants do not claim that any conduct on the part of plaintiff induced or led them to believe that the Kieslers were authorized to act for plaintiff in foreclosing the deed of trust or that they relied upon any apparent authority of that kind in dealing with the Kieslers, nor does the evidence show that either of the Kieslers represented or stated to defendants either that they were acting in the capacity of agents for plaintiff or that they themselves held the notes and deed of trust, but Huber thinking they did hold the notes and deed of trust acted upon that assumption, and the Kieslers being aware that Huber did not know of the assignment took undue advantage of the situation and the confidence reposed in them by both the plaintiff company and defendants and conspired and connived to defraud both plaintiff and defendants. J. H. Kiesler had no express authority to order a sale under the deed of trust, nor can such authority be inferred from the fact that he was plaintiff's agent for the purposes above stated.

In the investigation made by plaintiff company immediately following the closing of the Kiesler bank it learned all the facts of the negotiations between J. H. Kiesler and Huber, the foreclosure sale, the payment of the money to the Kieslers and how same was paid. Following the foreclosure sale J. H. Kiesler remitted $1653.33 in payment on the Walter indebtedness for which plaintiff entered

credit on the notes. At that time plaintiff had no knowledge whatsoever of the wrongful and unauthorized acts of its agents, but was advised and caused by them to believe that the amount remitted was a voluntary payment on the indebtedness by the heirs of the deceased Walter. Certainly at that time and under such circumstances the acceptance by plaintiff of this money was not a ratification of the unauthorized acts of the Kieslers of which it had no knowledge. But though subsequently fully informed and possessed of all the facts plaintiff refused to return to Huber and the grantees in the trustee's deed that part of the money paid by them which it had received, elected to retain same and brought this suit in which it does not tender the defendants, who paid same, that part of their money it had received and holds, alleges the amount due and unpaid to be the amount of the principal of the notes after allowing credit for this payment, asks judgment against the widow, one of the makers of the note in that amount, that the trustee's deed be cancelled and set aside, the deed of trust foreclosed and the proceeds of the foreclosure sale applied to the payment of such balance. By its pleading, position taken in the trial court and contention made here, plaintiff, though having full knowledge of the facts at the time it brought this suit, elected and elects to retain this money and asserts it is entitled to do so without being held to have thereby ratified the unauthorized acts of its agents.

In this connection plaintiff says J. H. Kiesler represented to it that the heirs of the deceased mortgagor were paying this sum on the indebtedness and the indebtedness was reduced in that amount in such belief on its part. However, subsequently and before filing this suit plaintiff learned the facts concerning the payments to the Kieslers and how, why and under what circumstances they were made.

Plaintiff next says defendants are benefited by plaintiff's retention of this money "since the indebtedness against the land owned by them as heirs of Phillip Walter has been reduced to that extent." The money was paid to the Kieslers by the grantees in the trustee's deed as purchasers. Nor were all the heirs parties to the purchase at the foreclosure sale and grantees in the trust deed. The sum of $3500 immediately paid in cash by Huber, a son-in-law of deceased, who was not an heir, was, as the evidence shows, his individual money. The note to J. H. Kiesler in the amount of $7300 created and was the personal obligation of Nora L. Huber and G. B. Huber, her husband, and the other grantees in the trustee's deed and their wives. The makers paid Kiesler $700 in cash on this note which was credited thereon and he then sold the note for $6600, which amount he received in payment therefor, to the defendant Schaupert. Huber and these grantees in the trustee's deed were not personally obligated or liable for the payment of the Walter notes secured by the Walter

deed of trust. They were, legally, strangers to that indebtedness. Plaintiff received and, after having been fully apprised of all the facts of the transaction, elected to retain and does retain part of the money paid by them. Plaintiff keeps their money but asks that the trustee's deed be cancelled and set aside and that the lien of the deed of trust be declared as security for the balance of the Walter indebtedness and that same be foreclosed. It would retain and apply this money, reduce the amount of the debt and thereby enhance and strengthen the security afforded by the deed of trust, but otherwise repudiate the transaction. Plaintiff cannot at the same time repudiate the sale and insist upon sharing in the proceeds of it. Plaintiff's election after it had full knowledge of the facts, to follow the course which it pursued, in legal effect, amounts to a ratification of the acts of the Kieslers in making the sale and accepting the payment of the purchase price in manner and form in which they did though such acts were without authority or beyond such authority as they, as plaintiff's agents, had and is a ratification of the entire transaction between the Kieslers and the purchasers and grantees in the trustee's deed. Plaintiff cannot accept and retain beneficial results and at the same time avoid the burdens. [41 C. J. 493, sec. 114.] When one, under such circumstances retains the fruits, or as here a portion of the fruits, of the unauthorized acts of another, who assumes to act for him, he must be held to have ratified such acts as a whole. He cannot accept in part and reject in part. [State ex rel. Laupheimer v. Harrington, 100 Mo. 170, 13 S. W. 398; Fritsch v. National City Bank of St. Louis (Mo. App.), 24 S. W. (2d) 1066; Plummer v. Knight, supra.] The legal result of the facts in this case may be said to be the same as in that class of cases wherein it is held that one having an interest in the land, who, with full knowledge of a defective foreclosure sale, accepts the proceeds of the sale but thereafter asserts claim to the land on the ground that such foreclosure sale was defective has ratified the foreclosure sale and is estopped from claiming the land. [Marsden v. Nipp (Mo. Sup.), 30 S. W. (2d) 77.] Plaintiff's course bars the relief which it seeks and whether it be called estoppel or ratification the result is the same. The judgment and decree of the trial court is therefore affirmed. *Sturgis, C.,* concurs in the result; *Hyde, C.,* concurs.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.