Fred C. BAYS, Plaintiff-Appellant,

v.

George JURSCH and Nellie Jursch, Defendants-Respondents.

No. 23086.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

Albert Copaken, Sylvia Copaken, Kansas City, for appellant.

June A. Short, Jr., James L. Gillham, Independence, for respondents.

BROADDUS, Judge.

This is an action for trover and conversion and involves the alleged sale of hogs. It originated in the magistrate court where

plaintiff, in aid of his suit, obtained a writ of attachment, attaching the defendants' bank account. Defendants prevailed in the magistrate court and plaintiff appealed to the circuit court. A trial in the latter court resulted in a jury verdict in favor of defendants. From the judgment entered on said verdict plaintiff has appealed.

In 1956 plaintiff Bays owned a small farm located near Lake City in Jackson County. He had owned the farm for about 12 years. During this period a Mrs. Vivian Wilson, who lived in Kansas City, as did plaintiff, had been spending week ends at the farm. She had been a tenant of plaintiff in Kansas City.

On August 26, 1956, the following advertisement appeared in the Kansas City Star: "For Sale—4 sows with 6 pigs each, $60 apiece. Follow Truman Road to south gate of Lake City, turn south on Owens Road, second house on left." And, according to the testimony of plaintiff and his witness, Mrs. Wilson, the directions in the ad correctly indicated the route and location of plaintiff's place. Although plaintiff testified that he did not cause the ad to be inserted in the newspaper he did have on the farm "five sows and twenty-four pigs." One of the sows was crippled.

In response to the ad defendants went to plaintiff's place. Upon arrival they were met by a dog and a boy named Freddie Lee Wilson. Freddie's mother, Vivian Wilson, then came down the drive, climbed over a gate and greeted defendants. There was some discussion concerning the hogs, following which Mrs. Wilson sold them to defendants. She wrote the following receipt: "Received of Pete Jursch $240.00 for 4 sows and 24 little pigs. Paid in full. Aug. 26–56. Vivian Wilson." Defendants gave Mrs. Wilson $20 and a check in the amount of $220, payable to the order of Fred Bays. Defendant, George (Pete) Jursch, took Freddie to seek a telephone to summon a truck in which to haul the sows and pigs. Defendants son-in-law, son and daughter arrived later in a truck. The pigs and sows were loaded in the truck, with Mrs. Wilson and Freddie Lee helping. There was a transaction between Mrs. Wilson and defendants' son-in-law, Riley Neal, concerning the purchase of the fifth or the crippled sow. Neal bought it for $15 and paid that amount to Mrs. Wilson in cash.

Shortly after defendants left plaintiff arrived at the farm. Mrs. Wilson informed him of the transaction and gave him the check and the $20. Plaintiff told her "I never put no ad in the paper for no hogs for sale." That evening plaintiff went to the sheriff's patrol office in Independence where he requested that defendants be summoned to answer some questions. Defendants went to the patrol office. Plaintiff claimed that there had been a mistake. Whereupon defendants offered to return the hogs but plaintiff refused to accept them. Plaintiff was asked: "Did you offer to return his money or the check and the $20? A. No, I didn't." Plaintiff also testified: "Then he (Pete Jursch) asked me if I wanted the hogs back. I said, 'Listen, I wouldn't have a hog taken off that place (defendants) back on my farm.'" The testimony also disclosed that after the meeting in Independence plaintiff went to see an attorney who made a demand upon defendants for an additional $400. Defendants testimony was that the price they paid for the hogs was reasonable.

It appears that when the case reached the circuit court defendants filed a motion to dissolve the attachment. This motion was overruled by the Judge of the Assignment Division of the Court without hearing any evidence. When the case was assigned to the division of the court where it was tried the judge permitted defendants to refile their motion to dissolve, and deferred action thereon until trial on the merits. Based upon the jury's verdict in favor of defendants, the trial court dissolved the attachment.

■ Plaintiff's first contention is that the trial court "acted without jurisdiction" by allowing defendants to file their second mo-

tion to dissolve the attachment; that the action of the Assignment Judge in overruling the previous motion "had become res adjudicata insofar as this trial court is concerned." There is no merit in the contention. Our Supreme Court in the case of Johnson v. Frank, 354 Mo. 767, 191 S.W.2d 618, had before it a similar question. It cited a long line of authorities and said, loc. cit. 624 of 191 S.W.2d:

"The doctrine of res adjudicata was not applicable so as to prohibit a different judge of the same court from exercising his discretion, permitting an amendment of the answers, hearing evidence, further considering. the same matters and reaching the conclusion and judgment appealed from."

■ Plaintiff next contends that the court erred in permitting defendants to testify to alleged declarations of Mrs. Wilson made out of the presence of the plaintiff in an attempt by defendants to establish an alleged agency of Mrs. Wilson to bind plaintiff. Plaintiff makes no attempt to point out where these alleged declarations appear in the transcript. It is not the duty of an appellate court to search the entire record in order to ascertain if any were in fact made. Butler v. Equitable Life Assur. Soc., 233 Mo.App. 94, 93 S.W.2d 1019, 1021; Esker v. Davis, Mo.App., 207 S.W.2d 798, 801.

■ Plaintiff's third contention is that the court erred in failing to sustain his motion for a directed verdict at the close of all the evidence. In ruling the question we must take the evidence of defendants (the prevailing parties) as true and give them the benefit of all favorable inferences arising therefrom. Haferkamp v. City of Rock Hill, Mo.Sup., 316 S.W.2d 620; Doerflinger Realty Co. v. Maserang, Mo.App., 311 S.W.2d 123.

■ The evidence shows that defendants were induced to go to plaintiff's farm in response to a classified advertisement published in the Kansas City Star. The ad carried detailed directions of the route to plaintiff's farm and the exact number of sows and pigs for sale, with the price thereof. Upon arrival at the farm, defendants found Mrs. Wilson in charge of the premises. The evidence further shows that defendants purchased 4 sows with 6 pigs each, as advertised, for the price stated in the ad. Defendants paid to Mrs. Wilson $20 in cash and gave her a check in the amount of $220 payable to plaintiff. She in turn gave defendants a receipt which recited "paid in full." The evidence is undisputed that plaintiff received the money and the check; that he at no time offered to return the same; that he refused to accept the return of the sows and pigs and made a demand upon defendants for an additional $400.

In the case of Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504, 510, it is said: "As a general rule one who, with knowledge of the material facts, retains the benefits of a transaction consummated by another ratifies the acts of the other in connection therewith and assumes the burdens and liabilities of such acts. This applies when an agent exceeds his authority and particularly in instances where the principal claims the person consummating the transaction was not his agent; that is, was a volunteer or self-constituted agent. The principal by availing himself of the acts and retaining the benefits becomes bound and concluded by the transaction as though the acts had been performed by an agent pursuant to express authority and subject to the acts to his disadvantage. State ex inf. v. Koon, [356 Mo. 284], 201 S.W.2d 446, 455, 456 (15, 16); Fritsch v. National City Bank, Mo.App., 24 S.W.2d 1066, 1067(1, 2) Meechem on Agency 2nd Ed., §§ 408, 410, 483; 2 Am.Jur. 177, §§ 223, 226, 227; 2 C.J.S., Agency, page 1097, § 49."

In the case of State ex inf. McKittrick v. Koon, supra, this language appears: "Where a principal with knowlege of the material facts of the unauthorized acts of another who assumes to act for him, re-

ceives and retains the benefits thereof, he thereby ratifies the same. St. Louis Mutual Life Insurance Company v. Walter et al., 329 Mo. 715, 728, 46 S.W.2d 166; Walker v. Hassler, Mo.App., 240 S.W. 257; 2 C.J. S., Agency, § 49, p. 1097." The court committed no error in overruling the motion.

■ Plaintiff's next contention is that the court erred in giving at defendants' request Instruction No. 5. The Instruction, after a required finding of the events leading up to the delivery of the sows and pigs by Mrs. Wilson to defendants, then reads as follows: " * * * and if you further find from the evidence that the said Mrs. Wilson delivered the aforementioned money to the plaintiff, in the form of $20.00 cash money and a check in the amount of $220.00 made by the defendant to the order of the plaintiff; and if you further find and believe from the evidence that plaintiff accepted said money and thereafter the plaintiff, through his attorney and agent, demanded of the defendants that they pay to plaintiff an additional $400.00 for said hogs; and if defendants were ready and willing and did offer to return said hogs and that the plaintiff did not tender back to defendants the aforementioned $240.00, which defendants paid for said hogs and offer to receive back said sows and pigs and repudiate said sale made by Mrs. Wilson, then your verdict should be for the defendants and against the plaintiff."

It is apparent that the instruction required a finding of all facts necessary to sustain defendants defense, which was: that plaintiff by his acts and conduct after receiving full notice of the transaction, ratified or affirmed the acts of Mrs. Wilson in selling the stock. We rule the point against plaintiff.

Plaintiff also contends that it was error to give at defendants' request Instruction No. 7, which related to the burden of proof.

A similar instruction has had the approval of our Supreme Court in the cases of Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10, 13, and Palmer v. Lassell, 287 S.W.2d 822, 829.

■ Plaintiff next says that the court committed error by giving Instruction No. 6 on behalf of defendants. This instruction told the jury that in the event it found for plaintiff that it should deduct from the ascertained damages the sum of $240, which plaintiff had received from defendants. The jury having found for defendants any alleged error in the instruction became harmless. Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366, syl. 1.

Plaintiff also asserts that the Instruction (No. 6) conflicts with Instruction No. 4 given on his behalf on the measure of damages. For the reason given in the preceding paragraph the point is without merit.

■ Plaintiff's last point is that the court erred in admitting in evidence Exhibits 1, 3, 4 and 5. As to Exhibit 1 plaintiff asserts that there was no evidence offered showing that Mrs. Wilson had any authority "to bind plaintiff by such alleged receipt." As we have pointed out, the jury found that plaintiff ratified the acts of Mrs. Wilson. Thus the contention lacks merit.

■ Exhibits 3, 4 and 5 were offered to show the value of the hogs. Defendant George Jursch had been in the live stock business for over 20 years. The exhibits were receipts for purchases of hogs made by defendant in the commercial market in the same vicinity of plaintiff's farm and near the date of the sale in question. Defendant, based upon his long experience in dealing with live stock, was entitled to give his opinion and the basis for that opinion, i. e., exhibits 3, 4 and 5, as competent evidence of the value of the hogs. Dillen v. Wabash Ry. Co., Mo.App., 294 S.W. 439;

Morrow v. Wabash Ry. Co., Mo.App., 276 S.W. 1030.

Finding no error in the transcript prejudicial to plaintiff, the judgment is affirmed.

All concur.