# H. T. STRATTON, Respondent. , v. S. S. COLE, RUBY COLE and DANIEL STRATTON, Appellants.

**Springfield Court of Appeals, December 6, 1919.**

1. **PRINCIPAL AND AGENT: Authority to Sell Land not Apparent Authority to Release Mortgage.** The right of an agent to sell or assist in selling lots would not give him implied authority to release a mortgage, which had been made to, and was owned by, his principal.

2. ————: **Evidence Insufficient to Show Apparent Authority to Release Mortgage.** The authority to collect money on the sale of certain lots did not give agent apparent authority to release from the records a mortgage of his principal, which was not in agent's possession and was not given him for collection.

3. ————: ————. That mortgagee sent paid note to mortgagor, who gave not to mortgagee's agent for purpose of having agent release mortgage securing note, was not sufficient to give agent apparent authority to procure release of another mortgage from mortgagor to mortgagee, where mortgagee had no knowledge that first note was ever in agent's possession or that agent had procured such release.

4. **VENDOR AND PURCHASER: Fraudulent Release of Mortgage Void as to subsequent Purchasers for Value.** Release of mortgage from the records secured by presentation of forged note by one who was not the legal owner or holder of note was fraudulent and void even as to subsequent purchasers for value and in good faith.

5. **WITNESSES: Testimony as to Transaction with Deceased not Party to Controversy Admissible.** In action to establish validity of note and deed of trust which on the face of the records had become inoperative on account of fraudulent release procured by presentation of forged note, the death of person who procured release did not preclude plaintiff from testifying under Revised Statutes 1909, section 6354, prohibiting party from testifying where other party to contract or cause of action is deceased, where such person was not a party to the note and deed of trust sought to be established and was not in contractual relationship to plaintiff.

6. **EQUITY: Where Equities are Equal the First in Time Will Prevail.** Where one of two innocent parities must suffer because of the fraud of a wrongdoer, the innocent party who has the first lien in point of time will be protected in his right, provided he has done nothing, which ought to estop him from asserting his right.

203 M. A.—17

Appeal fom Jasper Circuit Court.—*Hon. J. D. Perkins,*
Judge.

AFFIRMED.

*R. M. Sheppard* and *A. R. Dunn* for appellants.

*C. E. Prettyman* and *Owen & Davis* for respondent.

FARRINGTON, J.—The plaintiff filed a bill in
equity in the circuit court alleging that he was the owner
of a note given by R. L. Hayes to him for $1300, secured
by deed of trust on a certain tract of land in Newton
County, Missouri, which deed of trust was recorded in the
Recorder's office. The petition then alleges that Hayes
conveyed the land, and through successive mesne convey-
ances the defendants became the owners of the land sub-
ject to the deed of trust before mentioned. The petition
further states that plaintiff is still the owner and holder
of said note; that ever since its execution it has been in
his possession and control, and that it has never been
paid nor satisfied in any manner whatever. It then al-
leges that on the 13th day of January, 1917, one Truman
Elmore fraudulently undertook to release the deed of
trust upon the records in the office of the Recorder of
Deeds, and did on said date write upon the margin of the
record that the note secured had been satisfied, and sign-
ed his name to the release as assignee and legal holder
of the note, and did thereby fraudulently procure and
induce the Recorder of Deeds to attest the same and
write an indorsement upon the margin of the record that
said note so secured was produced and cancelled. The re-
lease and satisfaction by the Recorder is in the usual
form, with the usual certificate that the note had been
produced, having been properly assigned, and cancelled.

The petition further alleges that the said Truman
Elmore had never been the assignee, owner or legal
holder of said note, and that plaintiff's note had never
been presented to the Recorder of Deeds nor cancelled.

The prayer of the petition is that the purported and pretended release be set aside and cancelled and adjudged to be null and void, and that the court ascertain and determine the titles, rights, interest and liens of the parties and adjudge that plaintiff's deed of trust is a lien upon the land unpaid and unsatisfied, coupled with a prayer for general relief.

The answer of S. S. Cole, first is a general denial of plaintiff's petition, and further answering charges; that at the time of the release mentioned in plaintiff's petition the said Truman Elmore was the authorized and acting agent of the plaintiff, and had been continuously for a long time prior to that date acting as his agent, with full authority from plaintiff to make releases for him, sell land and collect the purchase price therefor in connection with plaintiff's real estate business. That on numerous occasions, prior to the making of the release which is the subject-matter of this suit, the said Elmore had acted as agent for the plaintiff and those connected with him, with full authority from plaintiff to sell various tracts of land belonging to plaintiff and his co-partners, collected the purchase price and delivered the deeds, made releases of record for the plaintiff, and had performed various other acts as the agent for plaintiff, all of which were fully acquiesced in and ratified by plaintiff, and of which the defendants had knowledge. That these acts were done with reference to land lying near and in the neighborhood of the land involved in this suit, and that by such course of dealing the defendants were led to believe, and did believe that said Elmore was fully empowered and authorized by the plaintiff to do all things necessary toward a complete transfer of property belonging to plaintiff or in which he held an interest either as owner, mortgagee or otherwise.

It is further alleged that more than two years has elapsed from the time of making the release of said deed of trust in controversy before the plaintiff commenced

this suit, and that the suit was commenced about a month after the death of said Elmore by suicide

The answer further alleges that defendants had placed valuable and lasting improvements upon said land since purchasing it. That the records of the Recorder's office show that the note sued on had been released in the Recorder's office January 13, 1917, and that relying on such record they had purchased the property, paying the sum of $500, gone into possession and made said improvements without any notice or knowledge that the release was wrongful, and prays that plaintiff be estopped from denying that said release was a regular binding release; and further prays that if said deed of trust was not properly released and cancelled that defendants are entitled to have the same released, cancelled and discharged; and further prays that defendants be found by decree of court to be the owners in fee simple, free and clear of any liens on the part of plaintiff. And further ask that if the court should find said note was paid and discharged, and the release by Elmore was without authority, to now enter a decree releasing and discharging the defendants from the incumbrance of said deed of trust. The answer also prays for general relief and costs.

Daniel Stratton was the trustee in the deed of trust which was given to plaintiff. He answers by general denial, and further answering says that if the deed of trust described in plaintiff's petition conveyed the land to him as trustee, it was done without his knowledge or consent.

The court rendered a decree in plaintiff's favor, finding that on the 27th day of March, 1916, one R. L. Hayes was the owner of the land covered by the mortgage, and that he executed a note in the sum of $1300, together with interest payable to the plaintiff, and simultaneously executed and delivered a deed of trust on the land mentioned. That the deed of trust was duly recorded in the office of the Recorder of Deeds of Newton County, and that thereafter, one Truman Elmore,

pretending to be the owner and holder of said note, presented a note purporting to be the note described in said deed of trust, and acknowledged payment of said note described in said deed of trust and caused the Recorder of Deeds of Newton County to certify a release of record. The court further finds that Elmore was not the owners of said note, and that the same was wrongfully and fraudulently released and discharged on the records of the Recorder of Deeds of Newton County; and further finds that Cole became the purchaser of the real estate after the fraudulent release was entered, and had made improvements thereon to the amount of $35. The court then ordered, adjudged and decreed that the release and cancellation of the deed of trust be set aside and for naught held and that the deed of trust given to secure the note held by the plaintiff be adjudged and decreed in full force and effect; and that the interest and title of defendants in and to said real estate aforesaid is subject to the deed of trust; and further decreed that S. S. Cole have a lien on the property for the amount of his $35 improvements, said lien to be subject to the deed of trust. The defendants being dissatisfied with this judgment have brought their appeal to this court.

There are but two questions to be considered in determining the correctness of this judgment. Defendants contend, in the first place, that the course of dealing which had been carried on betwen the plaintiff and Truman Elmore was such as to establish the fact that there was an agency created that authorized Truman Elmore to enter the release in the Recorder's office, and that such course of dealing and acts which were known to the defendants and relied upon by them in becoming the purchasers of the land estopped the plaintiff from denying the authority of Elmore to make the release.

The next question presented by appellant is that the court committed error in permitting the plaintiff and his witness Hayes to testify in this proceeding because of the death of Elmore, the man who caused the entry

of the alleged fraudulent release.   We will take these questions up in their order and in disposing of them state the facts relative to each.

It appears from the evidence that the land covered by this deed of trust was owned by a Company known an the MonArk Townsite Company, which Company was practically owned and entirely controlled by Truman Elmore; that the land was by such Company deeded to R. L. Hayes, the maker of the note given to plaintiff. Hayes, while the owner of the land, executed the note held by plaintiff for $1300, and secured it by a deed of trust on the property.   Thereafter, Hayes conveyed the property to the MonArk Townsite Company, which company as before stated, was controlled entirely by Elmore. When this deed was made from Hayes to the MonArk Townsite Company, the plaintiff's debt and deed of trust was a valid and subsisting record lien on the property.   The MonArk Townsite Company, through Elmore, its agent, conveyed it to defendants herein, and before doing so produced a note to the Recorder of Deeds of Newton County, which was apparently a facsimile of the note sued on and described in the deed of trust, with an indorsement making him the assignee, and armed with such note he procured the release and attestation of the Recorder of Deeds.   The recorder of Deeds testifies that the note presented to him for the purpose of cancelling the deed of trust appeared in all respects to correspond with the note described in the deed of trust, and appeared to be in the hands of Elmore as assignee, and that the note presented by Elmore was marked cancelled by him.   It further appears that the note sued on by the plaintiff bears no sign of ever having been cancelled, and it too corresponds in all respects to the note which was described in the deed of trust.

Hayes and the plaintiff were partners in a real estate sales company, which company had some dealings with Truman Elmore in the sale of lots of the MonArk Townsite Company and at other places.   During these sales Elmore, Hayes and the plaintiff were present.

The evidence relied upon by defendants to show that an agency existed between Elmore and the plaintiff, and evidence which would estop the plaintiff from denying an agency, is: That during the time of the sales of a number of lots, and in which from the record it appears all three had some interest, Elmore helped to sell the lots, sold some of the lots, delivered some of the deeds and collected some of the money. In addition to this, one witness testified that in talking to Stratton about the purchase of some lots which were owned by the MonArk Townsite Company, prior to the sale of these lots, he told Stratton he was thinking of making a deal with Elmore and getting some lots, and that he said to Stratton, "Is it all right," and that Stratton answered him back and said, "Any kind of a deal you make with Elmore will be all right with the Hays people." Elmore, plaintiff and Hayes were seen a number of times riding together in an automobile. This practically covers the testimony to establish an agency between the plaintiff and Elmore so far as the purchase and sale of lots is concerned; it being remembered that the Hayes Real Estate & Sales Company was selling property for the MonArk Townsite Company, which was owned by Elmore, and the Hayes Company was composed of the plaintiff and Hayes as partners. The testimony shows that the plaintiff and Hayes were residents of the State of Tennessee, and Elmore was a resident of Newton County Missouri.

An additional fact to prove that Elmore had authority to make releases of deeds of trust for the plaintiff was shown by the defendants, and it is the following transaction: Prior to the execution of the note in this suit, payable to and held by plaintiff, for $1300, Hayes had executed a note for about $4300 to plaintiff, secured by deed of trust on this and other properties, and in settling their own affairs it was agreed that Hayes should make various notes and secure them by deeds of trust to plaintiff, and this $1300 note is a part of the result of that settlement. In other words, the $4300

note was taken up by Hayes paying a certain amount of cash and executing several notes, one of which is the note in suit, which settlement paid off the $4300 note by the giving of new notes and payment of cash, and required a release from the records of the mortgage securing this $4300 note. To accomplish this release the plaintiff indorsed the $4300 note without recourse and sent it to Hayes, the maker thereof, to be used in canceling the mortgage securing it. Hayes, the maker of the note, gave it to Elmore to have him release the records, which was done. There is no showing whatever that the plaintiff knew that Elmore knew that Elmore that the plaintiff knew that Elmore had anything to do with the release of this $4300 note, and in fact he did the natural thing which any payee would do when a note is paid which is secured by a deed of trust, that is, he indorsed it without recourse and sent it back to the maker thereof.

From the evidence the trial court found there was not sufficient ground to establish an agency between plaintiff and Elmore, nor did such conduct as shown amount to an estoppel against plaintiff in this suit. This finding is in thorough accord with our own views of the case. It will be unnecessary to quote authorities which would hold that the right of an agent to sell or assist in selling lots would not give him implied authority to release a mortgage which had been made to and owned by his principal. Neither would the authority to collect money on the sale of certain lots empower such agent to release from the records a mortgage of his principal on a note which was not in his possession and which was not given him for collection. Nor do we think that the circumstances relative to the release of the $4300 note is sufficient to show such agency, or amounts to enough to estop the plaintiff from denying an agency.

The evidence, as stated before, fails to show that the plaintiff knew when the $4300 note was paid and sent by him, indorsed without recourse, to Hayes, the maker, that it would ever fall into Elmore's hands. That

was a transaction between Hayes and Elmore in which plaintiff could have no material interest.

It is held in 31 Cyc., page 1363, that the authority to sell land must be strictly pursued, and acts outside of the authority will not bind the principal. It must be remembered in this case that there is no showing that the note sued on by plaintiff, which was the original note given by Hayes, was ever in the possession of Elmore for any purpose. It would present a different case if it had been shown that plaintiff was in the habit of sending his secured notes to Elmore to collect and to release the records when paid, but no such showing is made in this case, and it is held in the case of Knoche v. Whiteman, 86 Mo. App. l. c. 573, that evidence that the attorney or agent was merely for collection of a mortgage debt, or that he was in possession of a mortgage and note will not show authority to release the property without a payment of the debt.

In the case of Dawson v. Wombles, 111 Mo. App. 532, 86 S. W. 271, it was held that where it was shown that the owner of a note had left the note in her father's care, custody and control, with authority to collect and credit payments thereon and held him out to the maker as her agent for the purpose of collecting, crediting and discharging the note, that if the maker paid her father, she would be estopped from denying the right to make the release, and that his act would be absolutely binding upon her where third parties would be injured as a result. The facts, as we have related in the case at bar, however, fall short of bringing this case within that rule. We must, therefore, hold with the trial court that Elmore had no authority given him by plaintiff such as would impliedly endow him with the power of releasing this deed of trust, nor did the acts and conduct between the parties reach a stage that would preclude the plaintiff from denying such authority.

The next point raised by appellant is, that the plaintiff Stratton and witness Hayes, who testified for plaintiff, were incompetent to testify in the case at all,

because of Elmore's death. We are cited to section 6354 Revised Statutes 1909, and cases in which this section of law has been construed.

The real purpose of this petition is to establish the validity of plaintiff's note and deed of trust, which on the face of the records of Newton County had become inoperative on account of a release made by Elmore. The substance of the cause of action was to establish the validity of his note and mortgage which incidentally led to the cancellation of the record of satisfaction or release. The suit, therefore, was between plaintiff and the present owners of the land. Elmore was not a party to the suit, he was not a party to the cause of action. His name was nowhere connected with the notes, and the only interent he ever had in the notes was the ownership of land on which a mortgage had been given to secure the note. He had no contractual relation with plaintiff, and, as stated before, the suit is merely to establish the validity of a contract made between Hayes and the plaintiff. Without going into a long discussion of the authorities on this question, it is suffice, we think, to merely cite the very recent case of Bajohr v. Bajohr, 184 S. W. 76, where the Supreme Court in an opinion rendered by GRAVES, P. J., had the identical question before us under consideration. In that case a married woman, with her own money had purchased a piece of real estate and had received a deed from the grantor conveying the property to her. She then delivered the deed to her husband who was to take it and have it recorded. He erased her name and inserted his name in the deed, and died. Her suit was brought to reform the deed and to correct the fraud which had been perpetrated upon her. The suit was against the heirs of her deceased husband. It was urged in that case, as in this, that under section 6354, Revised Statutes 1909, her husband being dead, her testimony became incompetent. The court said:

"This is an old and familiar statute. The trouble with respondents' contention is that the statute does not

apply to the facts in the case. Mrs. Bajohr was not a party to any contract with her husband concerning this land. She says the contract was between her and Katherine Katlander. She is not seeking redress under a contract, but is asking that her contract with another person be reinstated to where it was prior to the alleged tortious and felonious act of the husband. The contract which she is trying to establish is one between her and Katlander. She makes no claim against the husband or his estate owing to a contract with him. One might as well say that had the husband stolen the wife's horses and sold them to a third party, and then died, she would be incompetent to identify her own stock and testify in a case against the parties holding it. It is true she is attacking an alleged deed to the husband, but she is no party to even that alleged contract.'' [See, also, Freeland v. Williamson, 220 Mo. l. c. 231, 119 S. W. 564.]

Applying the law of that case to the facts of the case at bar, we have here a plaintiff suing to establish the validity of a contract made with Elmore. To establish the validity of this note and mortgage in this suit, the fraudulent act of Elmore in releasing the mortgage becomes a question of fact. Plaintiff's testimony, together with his production of the note showing that it had never been out of his possession or out from under his control from the time of its execution to the time of its suit, that it had never been given to Elmore for any purpose, together with the physical fact that it did not appear to be cancelled, shows clearly that the note which Elmore produced to procure the fraudulent release was not plaintiff's note. There is no question but what his note was given for a valid subsisting debt, and that the mortgage was given to the same effect, and properly recorded. The testimony clearly shows that Elmore was never the legal owner or holder of the note secured by the deed of trust owned and held by plaintiff, and that the release made by him was fraudulent and void, and under the decisions will be held as a

void release even to subsequent purchasers for value and in good faith, such as were defendants in this case. [Wilkins v. Fehrenbach, 180 S. W. l. c. 23; Lee v. Clark, 89 Mo. 553; Cooper v. Newell, 263 Mo. 190, 172 S. W. 326; Pouder v. Colvin, 170 Mo. App. 55, 156 S. W. 483.]

In passing, we may add that the statute under consideration has been the subject of much litigation and of may constructions brought about by the various phases presented to the courts. There have from time to time been two lines of decision in the State, one going to a strict construction of the statute, now section 6354, Revised Statutes 1909, holding that the statute is an enabling act, and that its intention was to qualify witnesses who under the common law were disqualified prior to the statute, except in the exceptions named in the statute; and that in no event was the statute to be used as a disabling statute, that is, to prohibit those who could have testified prior to the passage of the act. On the other hand, a line of decisions in the Supreme Court and Appellate Court have viewed the statute under a more liberal equitable rule, which construction held that the first part of the act was enabling and the exceptions were disabling, and that the broad purpose of the law, after the passage of the statute, was to qualify parties and those interested in litigation as witnesses, except in cases where one of the parties to the contract or cause of action was dead or insane, and that under the exceptions the equitable rule would be, where the mouth of one party is closed by death, the other will be closed by law.

These two constructions of this law have already led to inconsistent and conflicting opinions, as will be seen by turning to the last case we have been able to find, decided by the Supreme Court, where a great many of the cases are discussed, in an opinion by WOODSON, J., it being the case of Wagner v. Binder, 187 S. W. 1128.

As w view the case under consideration, the death of Elmore did not bring it within the statute so as to

preclude the plaintiff from testifying. This is a case where one of two innocent parties must suffer, brought about by the fraud of a wrong-doer, who, under the answer of defendants, came to his end by suicide. Such cases are always difficult to solve, because whichever way the judgment goes, an innocent party must be hurt. The rule must govern, however, that the innocent party who has the first lien in point of time will be protected in his right provided he has done nothing which ought to estop him from asserting his right. The facts of this case disclose that plaintiff is entitled to a first mortgage on this piece of real estate, and that his conduct with reference thereto has not been such as would destroy it. The judgment of the trial court was rendered in accordance with the principles of law that govern such cases, and meets with our affirmance. *Sturgis, P. J.,* and *Bradley, J.,* concur.