CHARLES REYNOLDS ET UX. v. H. HARRISON STEPANEK and AMELIA I.
STEPANEK, Defendants, ENO EVERSMEYER, Appellant.—99 S. W.
(2d) 65.

Division One, November 12, 1936.

*Creech & Creech* for appellant.

806

*Frank Howell, William C. Martin* and *Omer H. Avery* for respondents.

HAYS, J.—This is an action in ejectment for the possession of an eighty-acre farm specifically described in the record and situate in Lincoln County. The underlying conveyances as shown in the record are these (dates given are material):

One Henry Eversmeyer was the common source of title. On August 26, 1921, he executed a deed of trust to secure a $3500 loan of the Hannibal Loan & Investment Company, due September 1, 1926.

By warranty deed of March 1, 1926, he conveyed to defendants Stepanek, husband and wife, who assumed payment of the encumbrance just stated.

On March 1, 1926, Stepanek and wife executed a deed of trust to Eno Eversmeyer, appellant herein, to secure a debt of $3000 due in one year. This instrument appears not to have been filed for record until September 17, 1926. It contains a clause stating it was made subject to the loan company's deed of trust.

Stepanek and wife executed a deed of trust, dated August 30, 1926, and filed for record September 15, 1926, to secure Charles Reynolds, plaintiff, for a loan of $3500 they obtained from him, due in two years. On the same date, September 15, 1926, the loan company's deed of trust was released on margin of the record, and the note secured thereby was canceled by the recorder of deeds.

The Reynolds deed of trust was for default foreclosed on October 17, 1932; said Reynolds was the purchaser and received deed from the trustee.

Eno Eversmeyer's deed of trust was foreclosed on November 21, 1932, and said Eversmeyer was the purchaser thereat. The Stepaneks

attorned to him immediately thereafter and remained in possession of the premises as his tenants.

Plaintiffs' petition was in common or statutory form.

The answer of Stepanek and wife was a disclaimer of any interest in the premises and an allegation that their possession was held for their landlord Eno Eversmeyer; who, by leave of court, shortly entered his appearance and filed his separate answer and cross-bill, in substance as follows:

First, a general denial. Next, a right of title and to possession under trustee's sale; the execution of appellant's deed of trust on March 1, 1926. It was charged that one C. A. Harper, a justice of the peace and notary public, trustee in the Reynolds deed of trust, prepared same as agent of plaintiffs and then had in hand the Eno Eversmeyer deed of trust; and afterward with the purpose of wrongfully and fraudulently depriving this defendant of the priority of the lien of the latter, did wrongfully direct the recorder of deeds to give priority of record to Reynolds' mortgage as a first encumbrance, which was wrongfully done with Reynolds' knowledge and consent, and without this defendant's knowledge, consent or acquiescence. At the Reynolds foreclosure sale, which preceded appellant's by a few weeks, appellant gave public notice and warning that he claimed priority of his own encumbrance.

We now quote: "And the defendant, for further equitable answer, claims that he is the fee simple owner of the land (describing it), and that the plaintiffs claim to have a title, estate or interest in said real estate. . . . Wherefore, the defendant prays the court to try, ascertain and determine the estate, title and interest of the parties . . . and that the court by its judgment or decree define and adjudge the title, estate and interest of the" parties "severally in and to said real property according to the statute," etc.

By answer (termed reply) filed to the cross-bill of defendant the plaintiffs set up all the conveyances mentioned above (except defendant's deed of trust and his trustee's deed), and alleged that plaintiff Charles Reynolds loaned defendants Stepanek $3500 for the purpose of paying off and satisfying the defendant's loan secured by the first deed of trust owned by said loan company, pursuant to a prior agreement between the parties that Stepanek and his wife, in obtaining the loan, would execute a first deed of trust on the land referred to. They received from Reynolds said sum and applied same to the payment of the loan company's debt, satisfied the record of said deed of trust, and duly canceled the note secured by same; whereby, it is alleged, the plaintiffs became subrogated to the right of the loan company under its senior deed of trust. There was a general denial of all matters contained in said answer and cross-bill not admitted in plaintiffs' reply (answer). The prayer asked judgment for the pos-

session of the lands, damages, monthly rents and profits and for general relief.

To the above answer of plaintiffs, defendant Eno Eversmeyer filed a reply in which he denied the allegations of said answer and alleged that Reynolds was a stranger to the title, a volunteer, and that the money, if any, furnished to extinguish the loan company's debt rendered Eversmeyer's deed of trust a superior lien to that of Reynolds, who should be estopped from his equitable claim, and the prayer of defendant's cross-bill was renewed.

The case was tried to the court. At the conclusion of the trial it was adjudged and decreed "that plaintiffs are, and were on October 18, 1932 (date of alleged ouster), the owners in fee simple of the lands in suit (describing same) and as such owners entitled to the possession of same; that on said date and continuously thereafter the defendant unlawfully withheld the possession;" that plaintiffs recover damages, rents and profits (assessed) and the possession of the premises and have writ of restitution.

Defendant Eno Eversmeyer, alone, appealed.

Owing to the contentions of the parties a construction of the pleadings becomes necessary, and will determine, at the outset, some minor questions raised.

█ It was not error for the trial court to deny appellant's motion to strike plaintiffs' reply and by such ruling treat appellant's answer as converting the cause into one in equity. True, in the beginning the case was plain ejectment at law. On the face of the deeds of conveyance mentioned above, which were introduced in evidence, legal title was apparently in the plaintiffs and, as against appellant's general denial, if his pleading had stopped with that, the plaintiffs would have been entitled to the possession of the premises on the additional proof of ouster as alleged, and a recovery of damages, rents and profits on proof of same. The same result would have followed notwithstanding appellant's further plea that title passed, immediately upon the execution of appellant's deed of trust, to the trustee named therein. This latter, because a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was originally given, and until the mortgagee enters for breach of condition, and in any respect until final foreclosure, the mortgagor continues the owner of the estate. [Kennett v. Plummer, 28 Mo. 142; Farmers' Bank v. Bradley, 315 Mo. l. c. 811, 815, 288 S. W. 774; 41 C. J., p. 620, sec. 591.] Regardless of whether or not it had merits, appellant's motion to strike was waived by his pleading over. [Titus case, next infra.] But it was without merit because the plaintiffs had a right to join issue by answer to the new matter contained in the appellant's pleading, which set up the elements of a cross-bill seeking to determine interests and quiet title under Section 1520, Revised Statutes 1929, on equitable grounds. Such grounds

were also pleaded in plaintiffs' answer thereto. In such a situation, under said section equitable relief may be invoked in ejectment suits by pleading title and facts invoking affirmative equitable relief. Then the chancellor may hear and determine the matter as an equitable proceeding and grant full and complete relief. [Titus v. Development Co., 264 Mo. 229, 174 S. W. 432; Summet v. Realty & Brokerage Co., 208 Mo. 501, 106 S. W. 614; Williamson v. Frazee, 294 Mo. 1. c. 329, 242 S. W. 958; Jacobs v. Waldron, 317 Mo. 1133, 298 S. W. 773.]

The plaintiffs on the one side and the appellant on the other offered instructions in the nature of demurrers to the evidence. They were properly refused as they could serve no office in an equity proceeding, which this case had become. The separate findings of facts made by the trial court at the request of appellant, though included in the printed record, are not in any wise binding on this appeal. Such findings and conclusions, if made in compliance with the statute, pertain only to actions at law, and are only advisory here, for an equity suit is for consideration anew on appeal. [Walther v. Nunn (Banc), 233 Mo. 104, 134 S. W. 993; Kuczma v. Droszkowski, 243 Mo. 57, 61, 147 S. W. 1000.]

It may be assumed the property was unencumbered at the time Henry Eversmeyer conveyed it to Mr. and Mrs. Stepanek. It appears, however, that Henry was indebted to the appellant, his brother, in the sum of $3000, unsecured. In closing the sale to Stepanek, Henry took from the grantees said mortgage to the use of appellant in lieu of part of the purchase price. So that the cash, $1000, paid Henry over and above the mortgages of the loan company and appellant, was raised by Stepanek on personal security. It is evident his equity was small and precarious.

It was shown that Harper, the justice and notary, prepared all the deeds mentioned herein. Appellant's deed of trust was by his brother left with Harper for safekeeping. It is upon this incident and the conduct of Harper in preparing this document and filing it of record that the appellant predicates fraud as charged in his cross-bill. We give Harper's version of this incident, to be followed by Henry Eversmeyer's version. This in substance is Harper's: He wrote both the deed to Stepanek and the trust deed to appellant at the same time. He asked Henry Eversmeyer if he wanted the deed of trust to his brother Eno recorded. Henry said no and directed Harper to put it in his safe and take care of it, saying further, "Maybe there will be some change to make and to save some expense we'll not have it recorded." [Note: The loan company's first mortgage was to become due in six months.] Henry Eversmeyer testified that at that time he told Harper to take care of that instrument and have it recorded. He further testified that he had advised Eno that he was about to sell the place and the latter would get a second deed of trust on it in lieu of Henry's personal note held by Eno. Eno tes-

tified that he received such advice from his brother and left that matter entirely with him.

The facts leading up to the making of the Reynolds loan and deed of trust are these as shown by the greater weight of the evidence: When the date of maturity of the loan company's debt was near at hand, Stepanek set out to get a new loan to discharge and replace it. To a number of persons he made known his purpose. He approached Will Reynolds, brother of plaintiff Charles, under circumstances detailed in evidence. Will answered that he did not have so large a sum but thought maybe his brother Charles probably did have, and offered to see Charles and report to Stepanek. Stepanek accepted the offer. Charles not having the required amount, obtained on his own personal note a sum from Will sufficient to supply the deficiency and then made the loan in question.

The evidence is clear and convincing that Stepanek represented throughout that the maker of the new loan was to occupy the then position of the loan company, and his lien was to be a first lien on the property; and that with such agreement and understanding the Reynolds transaction was consummated in the manner stated. This conclusion is supported by the testimony of Charles and Will Reynolds and Harper, as well as by corroborative evidence next referred to, and is not successfully refuted by the testimony of Stepanek who was partisan in his attitude, whose testimony was equivocal in this and other respects, and who was indirectly impeached as will presently appear.

Several witnesses were permitted to testify over objection and exception that while Stepanek was attempting to borrow the money to discharge the loan company's mortgage he stated to them that the lender would be secured by a first mortgage. This, the appellant urges, was prejudicially erroneous because such evidence was hearsay. It was hearsay but not, we think, within the general rule pertaining to hearsay evidence. As already indicated it was admissible at least for the limited purpose of indirect impeachment, because Stepanek had denied making such statements. But we consider it primarily admissible. The statements, if made, were made *ante litem* and were corroborative evidence on the material and disputed equitable issue. They bore upon the inherent probabilities in regard to the motive, purpose and understanding of Charles Reynolds which were impunged by appellant's charge of fraud made against him. This situation is entirely different from those in cases which appellant relies upon (O'Neil v. Crane, 67 Mo. 250; Fougue v. Burgess, 71 Mo. 389) in which the general rule against hearsay evidence found fitting application.

We consider next the incident of making and filing the Reynolds deed of trust. The parties to the instrument met at Harper's office. Relative to what occurred then and there Stepanek testified that

"Reynolds said to Harper, 'You are sure I am not getting a second deed of trust on this farm?' Mr. Harper said, 'Absolutely not;' he said 'You are getting a first deed of trust on this land;' he had a copy of the Eno Eversmeyer deed of trust on his desk and held it up and said, 'This has never been recorded; absolutely you have a first deed of trust.'" It appears that Stepanek paid Harper the expenses of drafting and recording the instrument, the release of the loan company's mortgage, and the subsequent extension of the abstract when Harper's bill was rendered. The testimony of Stepanek quoted above is in direct conflict with that which he gave in his deposition taken before the trial, wherein he testified that he could recall nothing that was said in Harper's office at the time just referred to about the Eno Eversmeyer deed of trust; that he did not know where that deed of trust was.

On that subject plaintiff Reynolds testified in substance: Stepanek had arranged with Harper to handle the transaction. Reynolds had not consulted Harper or any one else about the matter, and no questions were asked Harper by him, and no mention made in his presence of any second deed of trust or of Eversmeyer's, and no such instrument was exhibited. Harper prepared the papers, Stepanek and his wife executed them and the remainder of the transaction was left to Harper.

Henry Eversmeyer gave testimony tending to show he advised Reynolds of the existence of Eno's second deed of trust. His testimony was successfully refuted, we think.

Harper gave testimony to the effect that Stepanek borrowed the money from Reynolds to take up the loan company's mortgage. They had made the deal with the exception of having Harper prepare the deed and attend to all matters incidental to the loan transaction. He refuted the testimony of Stepanek as to what transpired in his office. He said the description of the property as placed in the new mortgage was obtained by him from the county atlas, the deed was written by his stenographer and was left with him after it had been executed. Procuring a draft of the money Reynolds had furnished Stepanek, he enclosed same with a letter he then sent to the loan company advising that its loan was to be taken up and replaced by a new one obtained from another source, and requesting that the papers relating to the old loan be sent him for that purpose. After delay of some two weeks the loan company secured from its customer (assignee) the papers just referred to and forwarded them to Harper, who then, without further contact with Reynolds, proceeded to close the matter by marginal release of the satisfied mortgage, by filing the deeds of trust in the order already stated, and having the abstract extended.

Much complaint is made for the appellant with regard to the order in which the two deeds of trust were entered—that is, filed—of record. We perceive no substantial ground therefor. It is hardly conceivable

that if the Eversmeyer mortgage had been filed for record on the day of its execution, Reynolds or any one else would have paid off the loan company's debt secured by a first mortgage and taken one for the same amount subject to the Eversmeyer mortgage. Hence the appellant had no reason to anticipate that such might be done. What duty to appellant, then, did Harper owe in the transaction of the Reynolds mortgage? Knowing the understanding between Stepanek and Reynolds, and the purpose of the latter to get prime security, it would certainly have been unconscionable on the part of Harper to have done anything to give the Eversmeyer mortgage legal precedence over the new. It is true he could have gotten into communication with the appellant and advised him of what was being done, and perhaps he should have done so. If he had, no doubt the transaction would either have been blocked or the method which was followed would have been authorized by appellant. So that, the appellant's then rights in the premises were not substantially affected and his relation to the land remained unchanged. We think there was nothing fraudulent in Harper's purpose or act in so filing the instruments and no injury resulted therefrom. It is of no importance that the two instruments may have been *deposited* with the recorder of deeds at the same moment if at the time the recorder was advised of the order and time either should be marked filed for the purpose of being recorded. That is filing in the legal sense. The purpose is to make plain of record and avoid confusing legal rights in the premises in so far as they may be affected by constructive notice arising from recordation. According to the evidence, Reynolds had no knowledge or information respecting the filing and recording of the deeds, and the facts in the record are insufficient to convict him of fraud. With respect to his own mortgage appellant gave his brother Henry unlimited authority.

Appellant urges that, irrespective of the legal effect of the order in which the deeds were filed, plaintiffs Reynolds had actual knowledge of the existence of appellant's mortgage. From a careful reading and consideration of the evidence we think it preponderantly shows that neither of the plaintiffs had actual knowledge of the unrecorded mortgage nor was either of them conscious of having means of knowing thereof. This seems to be the usual test of superior equity with respect to priority of an equitable title over a legal title to land. [Sensendefer v. Kemp, 82 Mo. 582; Taffe v. Kelley, 110 Mo. 127, 19 S. W. 539; Gross v. Watts, 206 Mo. 1. c. 395, 104 S. W. 30.] This, however, is a general rule which in a proper case may yield to other equities more impelling than equity predicated upon mere knowledge. But there is no need to go into the legal phase of the case, for though we might be disposed to rule the case in favor of plaintiffs on their legal title, we would reach the same end reached in the chancellor's decree.

The evidence points to no improper motive of Reynolds in making the loan, to no reason why he may have volunteered to surreptitiously depreciate the value of appellant's security. He was not even acquainted with appellant. The evidence discloses no special attractiveness to an investor of the loan as such. We find that Reynolds conducted himself uprightly throughout the transaction, in good faith and in the honest belief and reliance that the loan he was making would occupy the same position in point of security and seniority of lien as the loan company's.

It is clear under the authorities that he was not a volunteer. He paid his money and received the equivalent of that mortgage in return. The appellant's position relative to the common security, the land, is, as already said, not adversely affected. In such situation under well-settled principles of equity the appellant will not be permitted to enrich himself at the expense of the plaintiffs. It is conceded in appellant's brief that the judgment of the court below is responsive to the petition, but not in accord with its findings of facts. It has already been stated that we accord such findings such measure of approval as we deem proper. We have seen fit to make our own finding of facts. It has been suggested that in view of his findings the chancellor should have directed a sale under the loan company deed of trust. Equity will not stop short of complete justice. [Jacobs v. Waldron and associated cases, supra.] At the same time it will not require the doing of a useless thing. Sale has been accomplished. The facts support no equities in appellant's behalf. The chancellor decreed, among other things, that the plaintiffs were on the date of the alleged ouster and at the date of judgment the owners in fee simple of said lands. We are of opinion the judgment and decree should be affirmed. It is so ordered. All concur.