FRANK LUSTENBERGER and W. F. LUSTENBERGER v. MARGARET G. HUTCHINSON, Administratrix of the Estate of HARRY H. HUTCHINSON; MARGARET G. HUTCHINSON; HARRY H. HUTCHINSON, JR.; MARION F. HUTCHINSON; HARRIET J. HUTCHINSON; W. C. GOW; R. E. GARDNER; CHARLES W. PURDY; OLIVE EDITH PURDY; HARUTEN SARKESIAN; SEROON SARKESIAN; HARRY WRIGHT; ESTHER GODFREY and LEROY MEAD, Trustee for H. S. SMITH INVESTMENT COMPANY, a Corporation, Defendants, HARUTEN SARKESIAN and SEROON SARKESIAN, Appellants.—119 S. W. (2d) 921.

Division One, September 17, 1938.*

*NOTE: Opinion filed at September Term, 1937, April 1, 1938; motion for rehearing filed; motion overruled at September Term, 1938, September 17, 1938.

52

*Louis Kranitz* and *Elliott & Crouse* for appellants.

54

*J. V. Gaddy* and *Ronald S. Reed* for respondents.

BRADLEY, C.—This cause was reassigned. It is in equity to set aside a sale under a deed of trust and to cancel the trustee's deed; to cancel and set aside a warranty deed, and to cancel and set aside a deed of trust, and to have the deed of trust upon which plaintiffs rely adjudged to be a first lien upon the real property involved, and that this lien be foreclosed. The court granted the relief sought by plaintiffs, and defendants Sarkesians appealed.

The cause was filed by Frank Lustenberger as the sole plaintiff, but during the trial it developed that his brother, W. F. Lustenberger, had a two-thirds interest in the note and deed of trust relied upon. When this situation developed, W. F. Lustenberger was made a party plaintiff. The petition was not changed in all places, after W. F. Lustenberger was made a party, to show the plural instead of the singular, but in stating the substance of the petition we use the plural.

Plaintiffs alleged that on May 23, 1927, defendant, Margaret G. Hutchinson, and her husband, Harry H. Hutchinson, were the owners of the described real property, a part of four lots in the city of St. Joseph; that on said date the Hutchinsons executed their 7 per cent note for $3000, to R. E. Gardner, due in three years, and payable at the office of the H. S. Smith Investment Company in St. Joseph; that on the same day, the Hutchinsons executed a deed of trust on the property to defendant Gow, trustee, to secure the $3000 note; that the deed of trust was recorded May 27, 1927; that thereafter and on the —— day of May, 1927, Gardner, for value, endorsed the $3000 note to plaintiffs, and that plaintiffs became the owners and holders of the note and deed of trust. Plaintiffs further allege that on June 13, 1928, trustee, Gow, without order or direction from them pretended to sell the property under the deed of trust, and on June 22nd thereafter, pretended to execute to defendants Charles W. and Olive Edith Purdy, a trustee's deed, conveying the property to them; that the trustee's deed was recorded June 30, 1928; that thereafter and on June 22, 1928, the Purdys pretended to convey the property by warranty deed to the defendants Sarkesians, but that the Smith Investment Company retained the Purdy deed to the Sarkesians till January 2, 1931, before it was recorded.

Plaintiffs further alleged that on January 11, 1935, the Sarkesians executed a deed of trust on the property to defendant Wright, trustee for defendant Esther Godfrey, to secure their (Sarkesians') note for $1000 given to defendant Esther Godfrey, and that the Godfrey deed of trust was recorded April 15, 1935. And plaintiffs allege that since purchasing the Gardner note and deed of trust they have not received any payment on principal or interest.

The Purdys answered by general denial, and specifically denied that they purchased the property at the foreclosure sale, or conveyed it to the Sarkesians. And the Purdys denied that they, at any time, had any interest in the property.

The Sarkesians answered by a general denial and alleged that on January 2, 1931, the Purdys for a valuable consideration conveyed to them the real property in question; that the deed recited that it was subject to a deed of trust for $3000 given to J. F. Healey to secure to him the payment of a $3000 note, held by Healey for the use and benefit of the Smith Investment Company; that they (Sarkesians) paid the Healey note "to the legal holder" on January 2, 1931, and that the deed of trust securing the note was satisfied of record. And the Sarkesians allege that at the time they purchased the property an abstract of title was furnished them, and, in effect, that the title from the abstract appeared to be good; that they purchased in good faith and without notice of any infirmity or irregularity in the title, and that they were innocent purchasers.

The Sarkesians further alleged that the Smith Investment Company, H. S. Smith and Joseph L. Hager (managers of the company) were the agents of plaintiffs in the servicing of securities purchased through the company; that this agency included the Gardner note and deed of trust, and that these agents had authority to collect principal and interest on plaintiffs' securities purchased through the company, and had authority "expressed or implicit, to order foreclosure" of the Gardner deed of trust; and that trustee, Gow, foreclosed the deed of trust at the request of plaintiffs or their agents; that at all times concerned plaintiffs maintained "a running account" on the books of the Smith Investment Company and permitted the collection of principal and interest, by the Smith Investment Company, on securities sold to plaintiffs by said company "that the amount due under the note and deed of trust" held by plaintiffs "was duly paid" to said general agents for plaintiffs and credited on their accounts with the Smith Investment Company; that these credits were accepted by plaintiffs and that plaintiffs "had full knowledge of the fact that the monies so credited were available" and could have been collected from these agents from and after July 19, 1928, and that plaintiffs ratified the foreclosure.

The Sarkesians further alleged that they had been in possession of the property involved since January 2, 1931, during which time they had made repairs, paid taxes, and had made improvements exceeding $2000 in value; that although the Hutchinsons (makers of the note and deed of trust held by plaintiffs) were in default prior to June 10, 1928, plaintiffs made no effort to protect their rights for a period of seven years, and not until the Smith Investment Company became bankrupt; that Harry H. Hutchinson and H. S. Smith both died before plaintiffs did anything to protect their rights, and that because of their unwarranted delay they were guilty of laches, and should be barred.

Defendant Esther Godfrey, in her answer, alleged that the real property involved, "according to the records" was conveyed by Gow,

trustee, to the Purdys, and that the Purdys conveyed to the Sarkesians; that the Sarkesians gave her the $1000 note, secured by the deed of trust on the property; that she made the loan to the Sarkesians and depended upon and relied upon the records as shown in the abstract furnished her; that she acted in good faith and was innocent of any "fraudulent acts of any other person," and asked that her deed of trust be held to be a first lien.

The abstract of the record recites that Margaret Hutchinson "in her individual capacity" filed an answer "in the nature of a general denial. The answer is not set out. The record does not show that other defendants filed answer. However, the judgment recites that all defendants appeared. No reply appears to have been filed.

The court found that plaintiffs were "the legal owners and holders" of the $3000 Gardner note and deed of trust; that the note and deed of trust were purchased by plaintiffs from the Smith Investment Company, about June 1, 1927; that the company acquired the note and deed of trust by endorsement from Gardner; and that said note and deed of trust had, since the time of said purchase, been "in the exclusive possession and control of the plaintiffs;" that on June 13, 1928, Gow, trustee in the deed of trust "purported to foreclose" and did at said time "offer said property for sale at public vendue;" that the deed of trust provided that if the makers became in default, then the whole of the indebtedness secured would become due; that the purported foreclosure "was made without the request or authority" of plaintiffs; that plaintiffs "received no benfit or consideration whatever out of the proceeds" of the foreclosure sale; that plaintiffs "had no knowledge of said purported foreclosure" until a short time prior to the filing of this suit (May 31, 1935); that the Purdys accepted the trustee's deed from Gow; that the record title to the real property at the commencement of the suit and thereafter, was in the Sarkesians; that such title was obtained by the warranty deed from the Purdys dated June 22, 1928; that the Sarkesians on April 11, 1935, executed a deed of trust on the property to secure the note for $1000 payable to defendant Esther Godfrey.

The court further found that the purported trustee's sale by Gow and the trustee's deed conveyed no interest to the Purdys; that the warranty deed by the Purdys to the Sarkesians conveyed no interest; and that the deed of trust by the Sarkesians to Wright, trustee for Edith Godfrey, conveyed no interest; that all these were "void and of no effect;" that the Gardner note held by plaintiffs was in default, and that plaintiffs were entitled to have said deed of trust foreclosed; that the amount due plaintiffs was $3000 with interest at 7 per cent from November 23, 1927, a total of $5364.98; and that plaintiffs' deed of trust was a first lien. The decree proper was in accord with these findings.

The controversy was chiefly between plaintiffs and the Sarkesians, and, as stated, the Sarkesians alone appealed.

Plaintiff, Frank Lustenberger, resided in St. Joseph, and W. F. resided in St. Louis. Frank had authority to act for W. F. in the matter of the Gardner note, and whatever Frank did in the matter was binding on W. F. There were several covenants in the deed of trust in addition to paying principal and interest. A breach of either was ground for foreclosure. In case of breach, foreclosure could only be had "at the request of the legal holder of said note." The notice of sale recited that default had been made "in the payment of interest due on said note." The record shows that plaintiff, Frank Lustenberger, had possession of the note and deed of trust from the time of the purchase, about June 1, 1927, and he testified that he did not request foreclosure. W. F. Lustenberger was not a witness, but the record shows that he resided in St. Louis at the time of the purchase of the note and deed of trust and thereafter, and was not in St. Joseph, except to visit his brother on one occasion, and there is no evidence that he requested the foreclosure. Trustee, Gow, who did the foreclosing, was called as a witness by plaintiffs, and he did not claim that either of plaintiffs requested the foreclosure. Gow was an abstracter, had his office in the same building where the Smith Investment Company had its offices. The Investment Company was on the first floor and Gow's office on the second. It also appears that Gow was named trustee in numerous deeds of trust handled by the Smith Investment Company. H. S. Smith and Joe L. Hager were the managing heads of the Smith Investment Company. Gow was asked and answered as follows: "Q. Will you tell the court whether or not Mr. Hager or Mr. Smith or anyone else, an employee, or anyone connected with the H. S. Smith Investment Company requested you to foreclose this deed of trust? A. Some of them did. I don't know which one it was, but I would not sell it if I had not been requested by one of them to do so." So it is clear, so far as shown, that there is no evidence that either of the plaintiffs requested the foreclosure.

It appears that plaintiff, Frank Lustenberger, had purchased other notes and deeds of trust (some 4 or 5) through the Smith Investment Company; that he had been dealing with this company since 1924; that the company collected what interest and principal he received on his purchases through this company, and mailed check to him. Also, if insurance and taxes were looked after it was done by this company. Plaintiff, Frank Lustenberger, said that he did not look after such matters. It is contended that by the course of dealing, it should be inferred that the Smith Investment Company, through its agents, had the right and authority to direct foreclosure. Authority to collect principal and interest is not sufficient to constitute authority to direct foreclosure. [St. Louis Mutual Life Ins. Co. v.

Walter et al., 329 Mo. 715, 46 S. W. (2d) 166.] And certainly the authority to look after taxes and insurance would not be authority to direct foreclosure. In other words, the mere authority to service a security is not authority to direct foreclosure. Such is the holding, in effect, in the Walter case, supra.

The foreclosure, as stated, was on June 13, 1928, and the trustee's deed, dated June 22, 1928, recites that the property was sold to the Purdys on a bid of $1000, but the Purdys testified that they were not at the foreclosure and paid nothing to any one. The abstract of title in evidence showed a deed of trust (on the property involved) dated June 22, 1928, from the Purdys to Gow, trustee for J. F. Healey, to secure a note of $3000, purporting to have been executed by the Purdys. This deed of trust was filed for record June 30, 1928. And also, the abstract showed a warranty deed dated June 22, 1928, from the Purdys to the Sarkesians. The warranty deed was acknowledged before Joseph L. Hager, notary, on June 28, 1928, but was not filed for record until January 2, 1931. The Purdys testified that they did not execute these instruments. There was expert and other evidence tending to show that they did. Hager testified that they did and that he took their acknowledgments, and the trial court found that they executed the warranty deed. Also, the court found as stated that the Purdys *accepted* the trustee's deed from Gow. The margin of the record of the Healey deed of trust showed that the $3000 Healey note was assigned to H. S. Smith (of the Smith Investment Company), and that he satisfied the record January 2, 1931, the date when the Sarkesians purchased. The Sarkesians paid $4500 cash. So it appears that the Sarkesians, on January 2, 1931, paid $4500 and accepted a deed dated and acknowledged 2½ years prior. Whether their names were not inserted until January 2, 1931, does not appear. However, that would be the only reasonable inference.

Charles W. Purdy testified that he never heard of the Sarkesians until about a year before the trial, which was May 17, 1936. Mr. Sarkesian testified that he bought the property in 1931; paid $4500 cash; that just before he bought, he was approached by G. R. Jones, a real estate man, who told him the property was being offered for sale; that he and Jones went to the Hutchinson Lumber Company and talked with Mr. Hutchinson (Harry H. Hutchinson) and that the deal was made with Hutchinson. Mrs. Sarkesian testified that she and her husband bought the property in January, 1931; paid $4500, part cash and part by check; that she and Jones "went up to the Smith Investment Company and we talked with Mr. Hutchinson and Mr. Smith."

The record shows that on July 19, 1928, the Smith Investment Company entered upon its books in the account of plaintiff, Frank Lustenberger, a credit of $1000 and in the account of W. F. Lustenberger a credit of $2000. These credits showed on the books to be payment

of the principal of the Gardner note held by plaintiffs, and the accounts were credited with two semiannual interest payments on this note, and were credited with the interest accrued from May 23, 1928, the anniversary of the note, to June 13, 1928, the date of the foreclosure. The interest, like the principal, was credited to the respective accounts of plaintiffs in the proportions owned by plaintiffs in the note. It is contended that plaintiff Frank Lustenberger, was frequently at the office of the Smith Investment Company after these credits were placed, and before the Smith Investment Company was adjudged a bankrupt in March, 1935, and could have received the money due himself and brother, had he asked for it. The record shows, and plaintiff, Frank Lustenberger, admits that he was in the office of the Smith Investment Company several times after July 19, 1928, when these credits were entered, and talked to Mr. Hager, one of the managers of the company, but he testified that on these occasions he went ''mostly on other loans.'' He further testified:

''I was never told by any officer or employee of that company, or by anyone, that there was any sum on deposit and in my name, which represented the proceeds of a foreclosure sale of this deed of trust. I never had any conversation with anyone at H. S. Smith Investment Company's office, or with any employee or officer of that company, regarding a foreclosure on this note and deed of trust. I never instructed or authorized anyone at H. S. Smith Investment Company to institute foreclosure proceedings. I was never informed by the company, or Joe Hager, or any other employee or officer of that company, that the property had been foreclosed. I never had any knowledge that an advertisement had been made of the foreclosure sale of this property in 1928. I did not know Charles Purdy or Olive Edith Purdy, his wife, at that time, and did not have any knowledge of their buying in this property at a foreclosure sale. I did not have any knowledge of their conveying this property to defendants, Sarkesians.''

It appears that on some of these occasions when Frank Lustenberger was at the Smith Investment Company office the books were brought to the desk of Hager with whom Frank most frequently discussed the notes he had purchased, and that he had the opportunity to examine the account of the notes he held, but he testified that the Gardner note was not discussed. Of this, Mr. Hager testified: ''On several occasions, I had the ledger on my desk before Mr. Lustenberger, but I don't know whether I called particular attention to any one item. The ledger was there before him where he could have seen the accounts, although he might have had to do some leafing from page to page. I could not say the accounts were all gone over because there were three or four of them, but I would say we leafed through them. Mr. Lustenberger was there beside me or sitting at

the desk. I did not do that every time he was there, but I would say that I did it on two occasions when he was there." And Hager further testified: "I would say that at any time subsequent to July 19, 1928, Mr. Lustenberger could have had the money represented by the credits on the Purdy-Hutchinson account (the Gardner note) if he had asked for it. From July 19, 1928, and for a period of twelve months thereafter, H. S. Smith Investment Company never, to my knowledge, refused to pay a single customer the proceeds of a collection of a loan when he wanted his money."

Plaintiff, Frank Lustenberger, seems to have had complete confidence in the Smith Investment Company. Example, he bought an $8500 note and paid $8000 down, and was to get the note and deed of trust when he paid the balance. He never could get the note, although he was ready to pay the balance. It was disclosed after bankruptcy of the Smith Investment Company that the $8500 note, when Frank bought it, was pledged to a bank. Also, through the Smith Investment Company, Frank got hold of a forged vendor's lien note on real property in Texas. After the Smith Investment Company was adjudged a bankrupt, and not till then, he found out about the *status* of his purchases of notes and deeds of trust through the Smith Investment Company.

He explained his failure to look after the note in question on the ground that the property upon which he and his brother held a deed of trust was worth the money they had in it. He testified that he "knew the property was well worth the money, even if the interest was not paid." There is no evidence in this record sufficient to overturn the finding of the trial court to the effect that the Smith Investment Company was not authorized to foreclose, and that the foreclosure was not ratified.

But it is contended that plaintiffs should be barred on the ground of laches. In Kellogg et al. v. Moore, 271 Mo. 189, 196 S. W. 15, 1. c. 16, it is said: "Laches is purely a creation of equity, and is only to be invoked by the defendant in a case where the plaintiff appeals to equity, and seeks the enforcement of an equitable right. Laches in equity is a doctrine which partakes in nature of the legal statutory limitation, but is not governed as to time by such statute. It may be inequitable to permit the establishment of an equitable right within a time less than the legal defense of the statutory limitations. Whether one has been guilty of laches in the prosecution of an equitable right is solely upon the facts presented and the inequitable result which might follow the establishment of a stale claim. Lapse of time is not the only thing for consideration."

By the result reached the trial court, in effect, found that plaintiffs were not precluded by laches. It is true that this is an equity case and that we try it *de novo,* but it is also true that in such cases due deference is accorded to the finding of the trial chancellor.

It is asserted that Frank Lustenberger's explanation for his delay and that he did not know of the situation sooner than he claims, is beyond credulity. The trial court was in a better position to determine this than are we. There was no attempt made to impeach Frank Lustenberger.

It is contended that the record of the trustee's deed by Gow to the Purdy's was notice to all persons, including plaintiffs, and that failure to take action to set aside this deed before the Sarkesians, purchased, plaintiffs are precluded. [Sec. 3040, R. S. 1929, Mo. Stat. Ann., sec. 3040, p. 1880, is relied on.] This section reads: "Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the recorder for record, *impart notice to all persons of the contents thereof* and all *subsequent* purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." (Italics ours.) No authority supporting this contention is called to our attention and we find none. If such were the law, then an investor, who had bought notes secured by first mortgage on real estate through an agency handling such, would be required, in order to protect his investment, to keep himself informed from the records as to whether there was a wrongful foreclosure. We do not think that Section 3040 has reference to *subsequent* conveyances, but to *prior* conveyances which might affect subsequent purchasers and mortgagees or lien claimants. We have examined a great number of cases where Section 3040 has been concerned, but we do not find the specific question discussed. All the cases examined have dealt with *prior* conveyances and subsequent purchasers, or some kind of subsequent lien claimants.

In this case, one of two innocent parties must suffer from the fraudulent conduct of a third party. Where one of two innocent parties must lose because of a third party's fraud, if the equities are equal, the established rule is that the one who has the first lien or claim in point of time will be protected. [Stratton v. Cole, 203 Mo. App. 257, 216 S. W. 976; Hellweg v. Bush, 228 Mo. App. 876, 74 S. W. (2d) 89.] It may be conceded that the evidence was sufficient to show that plaintiffs were negligent in not making investigation concerning the Gardner note held by them. Had such investigation been timely made, the situation would have likely been disclosed. However, when the Sarkesians made the deal for this property in January, 1931, they knew that they had not purchased the property June 22, 1928 (date of their deed) from the Purdys or anyone else. The fact that they were offered a deed dated and acknowledged two and a half years before they began their negotiations for purchase was a circumstance which should have prompted further investigation on their part as to *actual* condition of the title. The Sarkesians, therefore, were also negligent under these circumstances so that the court was

justified in considering that equities between the parties, with respect to negligence in making investigation, were not unequal.

We do not deem it necessary to specifically rule other questions mentioned in the brief. The situation of the Sarkesians is unfortunate of course, but "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." [Seilert v. McAnally et al., 223 Mo. 505, l. c. 520, 122 S. W. 1064.]

The judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.

### ON MOTION FOR REHEARING.

BRADLEY, C.—It is contended in the motion that we overlooked certain raised points and propositions. ▮ It is said that we overlooked the proposition "that there was no evidence that W. F. Lustenberger did not directly or through H. S. Smith Investment Company request the trustee to foreclose the deed of trust." Section 3094, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3094, p. 1918), makes prima facie true the recital, in the trustee's deed to the Purdys, that the legal holder of the Gardner note had requested foreclosure. Hence it is argued that the burden being on plaintiffs the prima facie situation must remain in the absence of evidence to the contrary. The opinion shows that Gow, trustee, made no claim that W. F. Lustenberger requested the foreclosure. Gow testified, as appears in the opinion, that some one of the Smith Investment Company requested the foreclosure, and that he would not have foreclosed had not some one of this company requested him "to do so."

It is said in the motion that trustee Gow was the agent of plaintiffs and that his acts were their acts. Supporting this contention defendants cite Butler Bldg. & Inv. Co. v. Dunsworth, 146 Mo. 361, 48 S. W. 449. In that case the deed of trust did not condition foreclosure upon the request of the legal holder of the note, but the reverse is true in the present case. Also, it appears in the cited case that one who had the right to demand foreclosure made the request to foreclose. No case, so far as we find, holds that, where the deed of trust conditions foreclosure upon the request of the legal holder of the note secured, the trustee can lawfully foreclose without such request. And where the deed of trust requires such request, a foreclosure without it is void. [St. Louis Mut. Life Ins. Co. v. Walter et al., 329 Mo. 715, 46 S. W. (2d) 166, l. c. 170; Magee v. Burch, 108 Mo. 336, 18 S. W. 1078; Williams v. Mackey, 227 Mo. App. 1016,

61 S. W. (2d) 968, l. c. 971; Plummer v. Knight, 156 Mo. App. 321, 137 S. W. 1019; 41 C. J. 945.]

It is stated in the motion that our opinion "overlooks" the proposition that the deed of trust vested in the legal title to the real estate in the trustee and that the trustee's deed passed that title to the grantees therein, which title vested in the Sarkesians "two and one half years later." In the first place we might say that the *legal title*, as that term is generally understood, does not vest in the trustee immediately upon the execution of a deed of trust, "because a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was originally given, and until the mortgagee enters for breach of condition, and in any respect until final foreclosure, the mortgagor continues the owner of the estate." [Reynolds v. Stepanek, 339 Mo. 804, 99 S. W. (2d) 65, l. c. 68, and cases there cited.] And in the second place, trustee Gow foreclosed without request from either of plaintiffs and the foreclosure was void and passed no title to the grantees named in the trustee's deed.

In the principal opinion we said that "where one of two innocent parties must lose because of a third party's fraud, if the equitites are equal, the established rule is that the one who has the first lien or claim in point of time will be protected." It is stated in the motion that we overlooked the more important rule that "where one of two innocent persons must suffer by the fraudulent act of a third party, the burden must be borne by him who enabled such third person to occasion the loss." We do not think that the latter rule is applicable here. By buying the Gardner note through the Smith Investment Company, plaintiffs made it possible of course for that company to perpetrate the fraud, the loss from which finally fell in the laps of the unfortunate Sarkesians. But the only thing charged against plaintiffs is that they did not give proper attention to their investment. That question was the chief one, and on the evidence the trial court found for the plaintiffs, and we approved that finding for the reasons set out in the principal opinion.

The motion says that "if the opinion stands as the law of this State, no title examiner will be able to safely pass any title in which there has been a foreclosure proceeding within the statutory period of limitation." In the principal opinion we cited Stratton v. Cole et al., 203 Mo. App. 257, 216 S. W. 976, but did not analyze the case. That case was in equity to cancel a wrongful satisfaction of the record of a deed of trust. Some two years after the wrongful satisfaction, the defendants, by mesne conveyances, became the record owners. One Elmore wrongfully satisfied the record by producing to the recorder what purported to be the genuine note secured by the deed of trust, and showing endorsement to him, but this note was a forgery. Defendants sought to show that such agency relation existed between

Elmore and plaintiff as to estop plaintiff from repudiating the record satisfaction, but the evidence was not sufficient to support estoppel. The Court of Appeals said (216 S. W. l. c. 980) : ''The testimony clearly shows that Elmore was never the legal owner or holder of the note secured by the deed of trust owned and held by plaintiff, and that the release made by him was fraudulent and void, and under the decisions will be held as a void release even to subsequent purchasers for value and in good faith, such as were defendants in this case,'' citing Wilkins v. Fehrenbach (Mo. App.), 180 S. W. l. c. 23; Lee v. Clark, 89 Mo. 553, 1 S. W. 142; Cooper v. Newell, 263 Mo. 190, 172 S. W. 326; Pouder v. Colvin, 170 Mo. App. 55, 156 S. W. 483.

It does not appear that defendants in the Stratton case relied upon an abstract, but so far as concerns what would show in an abstract, the situation was the same in that case as in the present case. The opinion in that case was filed in 1919, and has not been overruled or criticized, but has been followed. [See Hellweg v. Bush et al., 228 Mo. App. 876, 74 S. W. (2d) 89, l. c. 93.]

It appears in the Stratton case that some improvements were made by defendants and the judgment gave to them a lien on the real estate for these improvements, but made the lien subject to Stratton's deed of trust. No specific claim was made by the Sarkesians for improvements or taxes in the event they were unsuccessful in resisting the Lustenbergers' case, but we do not think such matters should go unnoticed. It appears that the Sarkesians erected a building on the premises, at a cost of between $1500 and $1800. It does not appear what taxes, if any, they paid. Tax liens were, of course, superior to plaintiffs' deed of trust and if the Sarkesians have paid taxes, then in justice they should be reimbursed.

This cause is in equity, and ''a court of equity will seek to do complete justice and determine and adjust the equities of all parties.'' [Jones v. McGonigle, 327 Mo. 457, 37 S. W. (2d) 892, l. c. 895; Selle v. Selle, 337 Mo. 1234, 88 S. W. (2d) 877, l. c. 883; Rockhill Tennis Club v. Volker, 331 Mo. 947, 56 S. W. (2d) 9, l. c. 20.]

The motion for rehearing is overruled, but the affirmance of the judgment should be set aside, and the judgment reversed and the cause remanded with directions to ascertain the value of the building and other improvements, if any, made on the premises by the Sarkesians, and to ascertain the amount of taxes paid by them, if any, and to modify the original judgment so as to show the value of the improvements and the amount of taxes, if any, paid, and to make the amount of the value of the improvements, plus interest at six per cent, a lien on the premises, but subject to plaintiffs' deed of trust, and to make the amount of taxes, if any, paid by the Sarkesians, plus interest at six per cent, a lien on said premises and superior to plaintiffs' deed of trust. And all this without regard to any rental value

66

of the premises for the period of occupancy by the Sarkesians. It is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.*, not sitting.